PHILIP H. OPIE *vs.* ANNIE T. CLANCY *et al.*

WASHINGTON—MARCH 10, 1905.

PRESENT: Douglas, C. J., Dubois and Blodgett, JJ.

(1)   *Impeaching Record.   Equity.   Executions.*

Equity will permit the record of a common-law court to be impeached in appropriate proceedings brought to restrain the levying of execution.

(2)   *District Courts.   Absence of Justice from District.*

Gen. Laws cap. 228, § 11, provides that whenever the justice of a District Court shall be absent or unable to serve by reason of sickness his duties shall be performed by the assistant justice:—

*Held,* that any absence from any portion less than the entire district was insufficient to enable the assistant justice to perform the duties of the justice of the court on that ground.

(3)   *Executions.   Equity.   Judgments.   Injunctions.*

Equity will not enjoin the enforcement of a judgment at common law in consequence of default of a party in regard to steps which might have been successfully taken at law, unless for some reason of fraud, surprise, or adventitious circumstance, beyond the control of the party, and only in cases where it appears that the party has a meritorious defence to the action.

(4)   *Attorney and Client.   Injunctions.   Equity.   Judgments.*

Equity will not enjoin a judgment because of the negligence, incompetence, or mistake of an attorney, unmixed with fraud or unfairness of the adverse party.

Where a cause was properly brought and entered in a District Court, but tried before an assistant justice without authority to act, but the defendant failed to take advantage of any of the methods open to him to review the judgment rendered by such assistant justice, and failed to allege any meritorious defence to such action, equity will refuse to enjoin the enforcement of the judgment at law.

BILL IN EQUITY to enjoin proceedings to enforce a judgment at law. Heard on demurrer to bill, and demurrer sustained.

DUBOIS, J.   This is a bill in equity brought to restrain the respondents, of whom the first named is the judgment creditor of the complainant in a certain execution issued out of the District Court of the Third Judicial District on the eleventh day of January, 1905, and the second thereof is a deputy of the sheriff of said county of Washington to whom the execution has been delivered for service, from proceeding with the levy of said execution, because the same was issued upon a judgment entered by a court having no jurisdiction in the premises, to wit: a court over which the assistant justice presided at a time when the justice of the court was neither absent from the district nor unable to serve by reason of sickness, because in good health and present in Westerly at the time of the trial.

Gen. Laws R. I. cap. 228, § 11, provides for the appointment of an assistant justice by the justice of a District Court having no clerk, and that "whenever such justice shall be absent or unable to serve by reason of sickness, his duties shall be performed by such assistant justice."

(1)     The record minutes upon the writ in the case read as follows, viz.: "Dec. 23d, 1904. On account of absence of Justice, and without objection from either party, case tried before William Hoxsey, assistant justice, and decision reserved. Dec. 30th, 1904, decision for Plaintiff for $141 $^{01}/_{100}$ debt and costs taxed at $4 $^{85}/_{100}$. William Hoxsey by J. W. S. Assistant Justice, John W. Sweeney, Justice. Execution 11 day of January, A. D. 1905."

The respondents have demurred to the bill upon twenty-three grounds, whereof many are for formal, and consequently amendable, defects in the bill; but some are substantial and referred to hereinafter.

The cause was heard primarily by a single justice upon the petition for a preliminary injunction, and testimony was taken before him *de bene*, relating to the trial of the case and the circumstances leading up to the reference of the same to the assistant justice. On account of the importance of the questions involved, and in order that an authoritative definition of the word "absent" as used in said section 11 might be made for the future guidance of District Courts having no clerks, the hearing of the cause was not concluded before said justice, but was by him referred to the full court, before whom it was argued, not only upon the petition for preliminary injunction, but also upon the bill itself, the demurrer thereto, and upon the controversy in general.

It is strongly urged, by the counsel for the respondents, that the testimony taken in the case *de bene*, as hereinbefore mentioned, is inadmissible either to explain or to impeach the record, which must be tried by itself and imports in itself absolute verity. We have held that "parol evidence can not be submitted to contradict the court record; for so long as it remains it is conclusive upon the parties, and in order to change it some appropriate proceeding acting directly upon the record

must be instituted. It is to be observed, however, that the rule as thus laid down in the cases relied on applies to common-law actions;  .  .  .  and hence the question arises whether it is also applicable to suits in equity; for, if so, it is controlling in the case at bar unless it can be held that this is a proceeding acting directly upon the record in said original action, which we do not think it is. To state the question more concisely, can a court of equity ever interfere and grant relief by way of permitting the record of a common-law court to be impeached as to the officer's return on the writ; or as to any other part of the record? We think this question must be answered in the affirmative." *Dowell* v. *Goodwin*, 22 R. I. 287, at p. 290.

Having thus determined that a court of equity can interfere and grant relief by way of permitting the record of a common-law court to be impeached in certain circumstances, the question arises whether the court will interfere in a case like the present.

(2) It appears from the testimony of John W. Sweeney, the justice of the District Court of the Third Judicial District at the time of the trial of the case, that he was present in the town of Westerly during the time of such trial by the assistant Justice, William Hoxsey, but that he was not in the court room or building in which the trial occurred during the progress of the same. Does this constitute such an absence of the justice as to enable the assistant justice to perform his duties?

By section 10 of said chapter 228 it is provided that in case of absence of the justice of a District Court from the district, etc., his duties shall be performed by the clerk, who shall constitute such court; and in the absence of the clerk his duties shall be performed by the justice; and by a special provision in the same section, the justice of the Sixth Judicial District, whenever he shall find that he needs assistance, on account of the crowded condition of his docket, may assign cases to be heard and disposed of by the clerk of said court as though he were a justice thereof; and both of them may sit and hear different causes at the same time and in different places in the district.

Reasons can be given for the apparent distinction in the statute between the absence of the justice required to confer

upon a clerk judicial powers and that necessary to authorize an assistant justice to perform the duties of the justice of a District Court having no clerk. In the first place there is this distinction as to the persons who may hold the offices: While the persons who might be eligible for the office of assistant justices of the District Court in their respective districts would also be competent candidates for the office of clerk except in the Sixth Judicial District, where the clerk must be a member of the bar (cap. 228, § 4), the same would not be true of the persons so eligible as clerks unless they were justices of the peace. Because, as provided in said section 11, an assistant justice must be selected from among the justices of the peace resident in the district for which such court is established. And while justices of the peace no longer have such judicial powers as were anciently conferred upon them, they "shall possess all the powers which now are or hereafter may be conferred by law upon justices of the peace." Gen. Laws cap. 24, § 9.

While there may be considerations which operated upon the General Assembly in the passage of sections 10 and 11 of the act in their present form, Gen. Stats. R. I. cap. 185, § 10, provided that: "Whenever a trial justice shall be absent or unable to serve, his duties shall be performed by the clerk of such court, if any there be, who shall constitute such court, otherwise by some person selected from the qualified justices of the peace in the town for which such court is established and elected by the town council thereof. If the clerk of any justice court shall be absent or unable to serve, his duties shall be performed by the trial justice thereof,"—it thus appears that at that time they made no particular difference between clerks and justices of the peace selected to serve in case of the absence or inability of the justice. We can say that, perhaps, the omission of the words "from the district" after the word "absent" in said chapter 228, section 11, was clerical, or that it was deemed unnecessary to repeat the words that had already been used in the preceding section. In any event, taking into account the history of the legislation relative to Justice and District Courts, we are satisfied that the absence referred to in sections 10 and 11 is the same, to wit,

from the district; and therefore hold that mere absence from the court room or building in which the trial was had, or from the town, or from any portion less than the entire district, is insufficient to enable the assistant justice to perform the duties of the justice of the court upon that ground. And this formed sufficient ground for objection to the court thus constituted, and also for exception to this court in case of the overruling of such objection.

(3)     Our finding that the assistant justice was unauthorized to act in the premises, however, is not decisive of the case.

There is no doubt but the District Court of the Third Judicial District had jurisdiction over the subject-matter and parties in the cause. The bill recites that the writ was returnable to the court, was answered in proper form by said Opie's attorneys, and that a continuance of said case was had from time to time until and up to the 23d day of December, 1904, when said case was called for trial; that on said day and when said case was called, and before commencing the trial thereof, the defendants' attorneys suggested the disqualification of the judge and asked under authority of Gen. Laws cap. 228, § 16, for the transfer of said case to some other district for trial. That said justice, after consultation, decided that the said cause should be heard by the assistant justice, William Hoxsey; that the defendants' attorneys suggested the lack of jurisdiction and disqualification of said assistant justice; that each and all of said objections were overruled by said judge of the Third Judicial District, who ordered the trial to proceed; and the trial proceeded.

In the course of the trial, after the evidence for the plaintiff had been introduced, it appears that the defendant moved for a nonsuit and the assistant justice took the same under advisement for one week when his decision for the plaintiff for the full amount claimed was announced by the justice of said court and a final judgment was rendered for the plaintiff, as hereinbefore set forth, the defendant protesting that said cause had never been tried; that he had never been afforded an opportunity to offer his defense, and that said adjournment was taken solely on the ground and for the purpose of deciding said motion.

for a nonsuit. It appears also that no exception was taken by said defendant to any of the proceedings now complained of; that no appeal or claim for jury trial was effectively made by said defendant, and that a motion to set aside said judgment was refused by said justice.

In this connection the opinion in *Case* v. *State*, 5 Ind. 1, is instructive and enlightening; therein it appears that a judge of the Franklin Circuit Court was appointed, by the clerk, auditor and sheriff of the county at a time when the office was vacant, they only having power of appointment in case of the inability of the judge to attend, his absence, or in case of his being unable to make such appointment. Under the constitution of Indiana the power to fill a vacancy in the office of judge of any court was in the governor. In the language of the court: "Then, if the office of judge, in the case before us, was vacant, the executive alone was competent to fill it. To construe the act in question so as to enable the county officers to appoint when there was no incumbent, would evidently place the statute in direct conflict with the constitution. But that was not the design of the legislature. The enactment was simply intended to provide for the temporary absence of a judge.

"However the view just taken does not dispose of this case. The appointment constitutes a part of the record. It appears in legal form, and gave to the appointee at least a colorable title to the office. He was no usurper, but supposed himself to be rightly invested, and acted in good faith. A court *de facto*, if not *de jure*, was thus constituted. During the trial, no attempt was made to impeach the authority of that court. And after conviction it was too late to question the validity of the title under which its duties were exercised. It has been decided that an objection to the commission of a judge should be made on the trial."

In the case at bar the petitioner had at least the following remedies at law open to him:

*First.* To refuse to participate in any of the proceedings before a tribunal which he claimed was without jurisdiction or was presided over by a judge without authority.

*Second.* If he concluded to try his case before the court so

constituted, then by exceptions, under Gen. Laws cap. 250, § 12.

*Third.* After a trial before said court by claim for jury trial, under Gen. Laws cap. 237, § 7.

*Fourth.* By application to the court in which the judgment was rendered within six months thereafter, under Gen. Laws cap. 246, § 2.

And *Fifth.* In case no such application had been made to that court within six months, then by petition to this court, under Gen. Laws cap. 251, § 2.

Of these remedies the petitioner attempted to avail himself of but two, viz.: the third, which he failed to claim in the manner prescribed by law; and the fourth, which was denied him by the court. No exception was taken to such denial, and doubtless exception would not lie thereto as the same is matter of discretion, as the power given to any court within six months after entry of judgment by default or by mistake, for cause shown, to set aside such judgment and reinstate the case is discretionary in the court where the judgment was rendered, and when it has been exercised is not subject to review by this court. See *Cascia v. Gilbane*, 26 R. I. 584, approving *Kinkead v. Keene*, 22 R. I. 336.

(4)    The following grounds of demurrer are substantial: The eighteenth, which recites "that the statements of facts contained in said bill show that the complainant had an adequate remedy at law;" and the twentieth, which relates "that the bill contains no allegation that the complainant has a meritorious defense to said action at law, or that if relief is granted a different result will be attained than that already decreed by the judgment already entered."

We have already stated and commented upon the legal remedies which were open to the petitioner. It is a rule that applications for relief in equity against judgments at law will be scrutinized closely, and that an injunction to prevent the enforcement of the same will not be granted except upon facts which show the clearest and strongest reasons for the interposition of chancery; that courts will not entertain a party seeking for relief against a judgment which has been rendered

against him in a court of law in consequence of his default in regard to steps which he might successfully have taken in the court of law, unless some reason founded in fraud, surprise, or some adventitious circumstances beyond the control of the party be shown to excuse such default. Am. & Eng. Ency. L. 2d ed. vol. 16, p. 374.

Where a party having a meritorious defense is by accident, unmixed with negligence on his part, prevented from making his defense or from taking steps for the preservation of his rights, such as moving for a continuance or for a new trial, or taking up the proceedings for review by appeal or error, a court of equity has power to grant relief by enjoining the judgment. Mere accident, however, though unmixed with negligence of the party, will not of itself furnish a ground for relief in equity. A party who has obtained a judgment after a full investigation of the controversy by a competent tribunal will not be forced by a court of equity to submit to a new trial unless justice imperatively demands it. It must clearly appear to the court that it would be contrary to good conscience to allow the judgment to be enforced; in other words, a meritorious defense must be alleged and proved; and it must appear that the accident was unavoidable or in no way attributable to the negligence of the party seeking equitable relief. Am. & Eng. Ency. L. 2d ed. vol. 16, pp. 383, 384.

"A judgment will not be enjoined because of negligence, incompetence, or mistake of the attorney. If a party loses the opportunity of making his defense or of taking other steps necessary for the preservation or enforcement of his rights, by reason of the neglect, inattention, or mistaken advice of his own attorney, without any fraud or unfairness of the adverse party, it is in law, as between him and the adverse party, the same as if he had lost it by his own neglect, inattention or fault." Am. & Eng. Ency. L. 2d ed. vol. 16, p. 392.

For these cogent reasons we feel constrained to sustain the demurrer of the respondents.

*Dixon & Rathbun* for complainant.

*Joseph C. Moore,* for respondents.