**Patrick R. REYNAUD et al.**

v.

**John KOSZELA d/b/a John Koszela and Sons.**

**No. 81–371–Appeal.**

Supreme Court of Rhode Island.

March 14, 1984.

Joseph Cassiere, Kirshenbaum & Kirshenbaum, Providence, for plaintiffs.

Arthur M. Read 2nd, Gorham & Gorham, Providence, for defendant.

OPINION

KELLEHER, Justice.

This is a Superior Court civil action in which the defendant, John Koszela d/b/a John Koszela and Sons (Koszela), appeals from an October 6, 1980 order vacating a January 1968 default judgment entered in

Koszela's favor against the plaintiffs, Patrick R. Reynaud and his wife Heliane (the Reynauds).

On March 7, 1964, the Reynauds purchased a 179-acre parcel of real estate,[1] half of which is situated in the Rhode Island town of West Greenwich, with the remaining half located in the Connecticut municipality of Voluntown. The Reynauds took up residence in a house situated within the West Greenwich portion of the real estate on Bailey Pond Road. Thereafter, they embarked upon a project that, upon completion, served as a summer camp for children.

While the project was under way, the Reynauds hired as their general contractor Alfred E. Bragger, who supervised the construction of a "huge dining room and kitchen" and two dormitories. Bragger in turn hired a number of subcontractors, including an electrician named Walter Cornell (Cornell), who purchased his supplies from Koszela. When Cornell failed to pay for the supplies, Koszela, in mid-November 1965, instituted in the Superior Court for Kent County a common-law action of assumpsit against the Reynauds by attaching their West Greenwich real estate.

The return on the 1965 attachment writ indicates that a deputy sheriff, acting pursuant to the then-pertinent statute, to wit, G.L.1956, § 10–5–9, filed an attested copy of the writ with the West Greenwich town clerk and then mailed "an attested copy of the within writ * * * to said Patrick R. Reynaud and Heliane F. Reynaud, defendants, at 114 East 76th St., New York, N.Y., their place of address as ascertained by me." Section 10–5–9 provided that after the filing and recording of the attachment in the registry of deeds, the officer shall in all cases "also leave an attested copy of the writ * * * together with a statement of the date and time of day of the attachment, with the defendant, personally, or with

some person living at his last and usual place of abode, if any he have, within the precinct of the officer; or *if he have none,* then the officer shall send the copy by mail to the defendant, if his address be known to or can be ascertained by the officer, and shall also, in the last-named event, leave a like copy with the person, if any, in possession of such real estate." (Emphasis added.)

Time marched on, and in late January 1968 the clerk of the Kent County Superior Court, acting pursuant to the provisions of Rule 55(b)(1) of the then recently adopted Superior Court Rules of Civil Procedure, entered a default judgment for $1,687.50 against the non-appearing Reynauds. Subsequently, a writ of execution was issued by the clerk. The return on the execution indicates that it was levied upon the real estate by the same deputy sheriff who had earlier served the common-law writ. The levy appears to have been recorded on March 26, 1968, with the West Greenwich town clerk, and the return also states that the Reynauds were personally served copies of the writ of execution "at said East Greenwich" on April 11, 1968.

Ten years later, on August 2, 1978, Koszela instituted a civil action in the Kent County Superior Court to quiet his title to what was the Reynauds' West Greenwich real estate. The next day, on August 3, 1978, Koszela filed an amended complaint in which he added a second count, demanding that the Reynauds pay him the sum of $2,750.63. This sum represents the original default judgment plus interest up until July 31, 1978.

Patrick Reynaud responded to the complaint, but his wife did not. However, in early October 1978, counsel for the Reynauds filed in the original assumpsit action a motion to vacate the 1968 $1600-plus

---

1. In a manner of speaking, the Reynauds' Rhode Island real estate might be said to have been constantly immersed in litigation. Earlier, in *Reynaud v. Bragger,* 104 R.I. 399, 244 A.2d 591 (1968), we rejected their appeal from the Superior Court's dismissal of their attempt to enjoin the foreclosure of a mortgage held on their property by Alfred E. Bragger. Some of the peripheral facts detailed in our present opinion are taken from the briefs submitted by the litigants in that litigation.

judgment, relying upon the representation that the Reynauds had never been served with process. Subsequently, on December 1, 1978, a stipulation signed by counsel for the Reynauds and Koszela was entered in the assumpsit action. It reads, "Defendants' Motion to Vacate is hereby withdrawn with prejudice." Later, on December 8, 1978, the Reynauds filed their civil action to vacate the 1968 default judgment, relying, in their words, on the "Common Law and statutes of the State of Rhode Island."

In *Waldeck v. Domenic Lombardi Realty, Inc.,* R.I., 425 A.2d 81, 83 (1981), we noted that there are two separate and independent routes by which a party can seek relief from a Superior Court judgment. One is by the invocation of the provisions of Super.R. Civ.P. 60(b), and the other is by the institution of an independent civil action seeking equitable relief from the impact of a judgment. Earlier, we expressed similar sentiments in *Paul v. Fortier,* 117 R.I. 284, 366 A.2d 550 (1976), where relief was being sought on the grounds of "accident, mistake, or excusable neglect," and we stressed that such relief under Rule 60(b) must be sought within a reasonable time but not more than one year after the entry of the judgment that is the subject of the motion.

At the October 1, 1980 hearing on the Reynauds' civil action, testimony disclosed that among the deceased at that time were the deputy sheriff who had served both the writ of attachment and the execution, the caretaker who had lived with the Reynauds at their West Greenwich home, the attorney responsible for the issuance of Koszela's writ of attachment, and the electrical contractor who had purchased the supplies from Koszela. The sole witness at the hearing was Patrick R. Reynaud (Reynaud).

Reynaud testified that he and his wife moved into their West Greenwich home in July 1964 and that they continued to live there into the year 1965. He also said that the caretaker resided with them during this period and that he was always present on the property. The Reynauds were totally unaware of the electrician's dealings with Koszela. Reynaud, a French national who immigrated to this country in 1962, in addition to his summer-camp endeavor spent three days a week in New York City at a building situated at 112–114 East 76th Street, where he operated a school for those who desired to become conversant with the French language. He insisted that the writ of attachment was never served on him or his wife while they were either in Rhode Island or in New York City. Reynaud made it clear that he recognized legal process when he saw it because he had been involved in litigation during 1965. He also denied that any copy of the 1968 execution was ever served upon him or his spouse.

According to Reynaud, he became aware of the 1965 litigation for the first time in the latter half of 1977, when he was so notified by a Providence law firm he had hired to search the title to the West Greenwich real estate as a preparatory step to developing the parcel into house lots. He also made it clear that any "personal" mail that was sent to the Reynauds came either to their West Greenwich residence or to their Fifth Avenue, New York, apartment.

In setting aside the judgment, the trial justice found from the uncontradicted evidence that in 1965 the Reynauds' usual place of abode was West Greenwich and that on the days when the Reynauds were not physically present there, the caretaker was in attendance. Thus, the trial justice ruled that because the deputy sheriff had failed to comply with the dictates of § 10–5–9, the Superior Court in 1965 had never acquired jurisdiction over the Reynauds.

In his appeal Koszela claims that the trial justice erred in several instances, primarily by excluding evidence and refusing to consider certain defenses.

Koszela first claims the trial justice erred in excluding from evidence a document purporting to be the completed writ of execution in the first suit. The original execution had been issued on March 15, 1968. At trial, Koszela sought to introduce a document that he maintained was the completed

execution. The Reynauds objected, claiming that the document had not been properly authenticated; and the trial justice sustained the objection.

■ Koszela argues that the evidence should have been admitted because Rule 44(a)[2] provides that court documents are self-authenticating. True, documents that have been submitted to a court and have become part of that court's records are indeed self-authenticating.

■ Koszela's counsel conceded that he did not know from what source the execution had emanated. General Laws 1956, § 9–25–20, in 1968 required any officer, after executing the mandates of a Superior Court execution, to return the execution to the Superior Court within six months of the date of its issuance unless the writ specifically provided otherwise. The so-called execution offered here, however, was never returned to the Superior Court and never became part of the official court file. The return on the execution indicates that personal service on the Reynauds was effectuated in the town of East Greenwich, and there is absolutely no evidence that the Reynauds ever resided in that municipality. In light of this record, we cannot fault the trial justice for refusing to admit the so-called execution into evidence.

Over a decade ago this court in *Nocera v. Lembo,* 111 R.I. 17, 298 A.2d 800 (1973), abandoned the common-law principle that a sheriff's return was conclusive with respect to his execution of the writ and took the position that a return could be impeached by "strong and convincing evidence." Here, Koszela maintains that the Reynauds did not sustain their burden of proof. He places great emphasis on the fact that Heliane Reynaud was not present at the trial, nor was any explanation given for her absence. Her husband's testimony as it related to his wife's involvement with the process is described by Koszela as "rank hearsay."

Admittedly, no explanation was given for the wife's absence. However, the record indicates that when the husband testified about the issue of the lack of notice to his wife of the initiation of the 1965 litigation, he made it clear that his testimony as it related to his wife was based upon the facts as he knew them rather than on what she had told him.

■ Although a courtroom appearance by Heliane might have been considered the frosting on the cake as far as the Reynauds were concerned, the trial justice obviously was of a firm belief, after examining the pertinent document, to wit, the assumpsit writ, that the deputy sheriff had never come close to doing anything that would have alerted the Reynauds to the fact that Koszela was attempting to collect from them monies owed him by the electrical contractor. The undisputed fact that the execution was never entered in court was further compelling mute testimony that proper and due notice was never given the Reynauds by the Kent County sheriff's department. Consequently, Koszela has utterly failed to persuade us that the trial justice erred in ruling as he did.

Koszela also argues that the Reynauds' suit should have been barred by the six-year statute of limitations that is found in G.L. 1956 (1969 Reenactment) § 9–1–13, which governs the institution of most civil actions. The Reynauds, on the other hand, emphasized that they were seeking equitable relief in a situation in which the critical issue is the absence or presence of laches.

■ In speaking in terms of the statute of limitations or the doctrine of laches, the litigants have somehow forgotten that we are dealing with a judgment which is void because of a lack of jurisdiction over the parties. In *Lamarche v. Lamarche,* 115 R.I. 472, 475, 348 A.2d. 22, 23 (1975), the court

---

**2.** Rule 44(a) of the Superior Court Rules of Civil Procedure reads in part as follows: "Proof of official record.—(a) Authentication of Copy. An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy."

noted that a judgment which is void because of a lack of jurisdiction over the subject matter or the parties whose rights are to be adjudicated is nothing more than a piece of paper which can be expunged from the record at any time. The successful claim of laches cannot give efficacy to a judgment that has no efficacy. The judgment is void at its inception. It matters not how, or in what way, or at what time the objection to its presence is brought to the court's attention. Somewhat similar sentiments were also expressed in *Shannon v. Norman Block, Inc.,* 106 R.I. 124, 130, 132, 256 A.2d 214, 218, 219 (1969).

■ Thus, Rule 60(b)'s requirement of reasonable time, but not beyond a year, may be applicable to other 60(b) motions. However, it is not applicable to motions based upon Rule 60(b)(4) which claim that the judgment which is sought to be removed is void. *Misco Leasing, Inc. v. Vaughn,* 450 F.2d 257 (10th Cir.1971); 7 Moore, *Federal Practice* ¶ 60.25[4] at 314–15 (2d ed. 1982); 11 Wright & Miller, *Federal Practice and Procedure:* Civil § 28.62 at 197–98 (1973). Consequently, the relief obtained by the Reynauds could be obtained at any time either pursuant to Rule 60(b)(4) or, as they have in this case, by their independent action.

The defendant's appeal is denied and dismissed, and the order appealed from is affirmed.