**ALLSTATE INSURANCE COMPANY**

v.

**Peter J. LOMBARDI.**

**No. 98–476–Appeal.**

Supreme Court of Rhode Island.

June 12, 2001.

Robert M. Brady, East Providence, for Plaintiff.

Paul A. Anderson, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

Can a party obtain relief from a judgment via an independent action when its own unexcused negligence led to the judgment's entry in the first place? The defendant, judgment-creditor Peter J. Lombardi (Lombardi), appeals from a grant of

summary judgment in favor of the plaintiff, judgment-debtor, Allstate Insurance Company (Allstate). In granting Allstate relief from a previous judgment, a Superior Court motion justice concluded that the judgment was void. On appeal, Lombardi contends that Allstate's negligence in failing to contest the earlier judgment barred it from attacking its validity in a collateral action and that, in any event, relief from that judgment should not have been granted because it was not void. We agree and hold that Allstate's negligent failure to respond to Lombardi's petition to confirm the arbitration award barred it from obtaining relief from that judgment via an independent action, notwithstanding that Allstate possessed an otherwise meritorious defense to that petition.

### Facts and Travel

On May 30, 1986, Lombardi was injured in a two-car accident while he was a passenger in an automobile driven by Donna Grattage (Grattage). Allstate insured the Grattage vehicle for up to $25,000 per person for underinsured and uninsured motorist (UIM) coverage. Lombardi sued the operator of the other vehicle, Richard J. Woloohojian (Woloohojian), for negligence. While Lombardi's suit against Woloohojian was pending, Woloohojian's insurer, American Universal Insurance Company (AUI), was petitioned into receivership. Thereafter, Lombardi requested UIM benefits from Allstate. After unsuccessful negotiations, Lombardi demanded arbitration of his UIM claim, as provided for in the Allstate policy.

Before arbitration began, Allstate offered Lombardi $25,000, the limits of its

UIM coverage. Lombardi refused this offer and instead sought an award of prejudgment interest against Allstate in excess of the policy limit. On April 14, 1992, while the arbitration proceedings were pending, this Court issued its decision in *Allstate Insurance Co. v. Pogorilich,* 605 A.2d 1318, 1321 (R.I.1992). We ruled there that, under the circumstances of that case, an insured was not entitled to recover prejudgment interest in excess of the limits of the insurance policy. *Id.* Nevertheless, on August 5, 1992, the arbitrators awarded Lombardi $40,000, plus $29,000 in interest. The record is unclear concerning the precise questions that the arbitrators decided in rendering their award, nor do we know whether any party called the *Pogorilich* decision to the arbitrators' attention. In any event, after the arbitrators' award, Allstate tendered a check for $25,000 to Lombardi. On the face of the settlement check Allstate had included a statement that said, "FINAL SETTLEMENT OF ANY AND ALL CLAIMS FOR BODILY INJURY UNDER UNINSURED MOTORIST COVERAGE ARISING FROM ACCIDENT ON 05/30/86." [1]

In November 1992, after negotiating Allstate's $25,000 check in final settlement of all his claims against Allstate arising out of the 1986 accident, Lombardi petitioned the Superior Court to confirm the arbitrators' award for a larger sum of money. On January 11, 1993, the Superior Court held a hearing on Lombardi's petition to confirm the arbitration award. Although a letter in the record indicates that Lombardi served upon Allstate's arbitration lawyer a copy of his cover letter to the clerk

---

1. When Allstate later sought relief from the previous judgment that had entered against it, Lombardi did not contest Allstate's assertions that he had accepted and negotiated the settlement check before that judgment entered and that the check contained the above-quoted language on its face. Nor did he present any reasons why the check that he signed should not be enforced against him according to its terms, other than arguing that Allstate's negligence precluded it from obtaining relief from that judgment.

of the Superior Court (the letter enclosed his confirmation petition and notice of hearing thereon), Allstate was not represented at the hearing. Nevertheless, the court confirmed the arbitration award in an order entered February 26, 1993, a copy of which Lombardi's attorney then served on Allstate's arbitration lawyer. Thereafter, he caused an amended order to be entered on July 2, 1993. The amended order awarded Lombardi the sum of $25,000, representing the limits of the insurance policy, but noted that Allstate would be credited for already having paid the $25,000 policy limit. The amended order, however, also required Allstate to pay interest and costs in addition to the $25,000 previously paid. This amended order and a judgment embodying its terms also were served upon Allstate's arbitration attorney.

Thereafter, on March 7, 1994, Lombardi caused an execution on the judgment to issue. When Allstate refused to pay any additional sum of money beyond the $25,000 policy limit it previously had tendered, on November 4, 1994, Lombardi filed a debt-on-judgment complaint against Allstate (later consolidated with this action) for the approximate sum of $46,000. On December 20, 1994, when Allstate failed to answer, Lombardi requested an entry of default. But before a default judgment could enter, Allstate filed an answer on January 13, 1995, and an attorney entered his appearance for Allstate. Allstate has suggested on appeal that its 1992–93 inaction on the confirmation petition had resulted from different law firms handling different portions of the claims arising out of the accident, and that the 1998 death and previous illness of Allstate's arbitration attorney excused its neglect in failing to oppose that petition.

Seeking relief from the judgment confirming the arbitration award and relief from its default in the debt-on-judgment action, Allstate then filed an independent action on March 14, 1995. In its complaint, Allstate asserted that the judgment was a nullity because, among other reasons, not only had it already offered the $25,000 policy limit to Lombardi before the arbitration began, but also, thereafter, Lombardi had accepted a check from Allstate for the policy limits of $25,000, one that he then proceeded to negotiate even though it contained language on its face indicating that it was "in payment of final settlement of any and all [UIM] claims." Moreover, Allstate averred that Lombardi still had recourse in his pending suit against Woloohojian for any remaining damages he may have incurred. Allstate also contended that Lombardi had failed to serve it with a copy of the confirmation petition and that Lombardi failed to produce any evidence that he did so. Lombardi, however, pointed to a cover letter his attorney sent to the clerk of the Superior Court, indicating that a copy of that letter, which had enclosed Lombardi's confirmation petition and notice of hearing thereon, was mailed to Allstate's arbitration attorney. Lombardi thus asserts that "notice as to the pendency of the petition to confirm and all other required notices were given to counsel for Allstate prior to any hearing thereon."

All three actions—the underlying confirmation-of-the-arbitration-award lawsuit, Lombardi's debt-on-judgment action, and Allstate's relief-from-judgment petition— were then consolidated in the latter Allstate lawsuit that is now before us on Lombardi's appeal. In due course, Lombardi filed motions for summary judgment on his debt-on-judgment action and on Allstate's petition for relief from judgment. At a subsequent hearing on those motions, Allstate admitted that it had received notice of the confirmation proceeding, that the confirmation petition had "got lost

somewhere" during the interim between the arbitrators' decision and its confirmation by the Superior Court, and that it made "a glaring error" by not responding to the petition or opposing the confirmation of the award.

Furthermore, although it verbally suggested to the Superior Court that its arbitration attorney had died in 1998—well after the arbitration and the confirmation proceeding had concluded—Allstate never even argued to the Superior Court that this attorney's death or illness constituted a basis for the court to vacate the judgment against it. Moreover, Allstate failed to produce any competent evidence to indicate whether the death or any preceding illness of its arbitration attorney had any effect upon its failure to oppose the confirmation petition or upon its failure to object, to challenge, or to appeal from the various orders and judgments that entered confirming that award. In fact, an unsigned affidavit of its arbitration attorney, allegedly prepared in 1995, did not mention any illness and failed to suggest that the attorney was in any way incapacitated when Lombardi petitioned to confirm the arbitration award in 1992. Thus, Allstate failed to argue that the attorney's death or illness qualified as excusable neglect. And it failed to introduce any evidence that could support any possible finding that the judgment confirming the award had entered in the absence of any negligence on its part or that its neglect in failing to appear and to contest the entry of judgment in that proceeding was somehow excusable. On the contrary, it admitted to its negligence in allowing the court to confirm the arbitration award without Allstate's objecting to or appealing from that judgment, suggesting, nevertheless, that the judgment was void because of the *Pogorilich* decision.

Thus, Allstate's attorney admitted to the Superior Court justice who was faced with Allstate's petition to vacate the judgment in favor of Lombardi that "confirmation of that [arbitration award] was, through inadvertence of prior counsel, never contested as it was apparently assumed that Lombardi's counsel, who was privy to the Superior Court's holding in *Pogorolich* [*sic*], would not seek relief in the form of an order confirming an award which had no legal relevance." He also admitted that "yes, there was some remiss lawyering, if you would, in allowing these various orders to enter." And he further conceded:

> "there was either inadvertence or carelessness on the part of [Allstate's arbitration attorney] thinking that it was being handled in the context of the third party liability case to just assume that she didn't have to come in and apprise the judge that, 'no, you shouldn't enter that judgment.' "

Nevertheless, a Superior Court motion justice denied Lombardi's summary-judgment motions, ruling that the judgment confirming the arbitration award was void because this Court's decision in *Pogorilich* established that Allstate could only be liable for the UIM limits of its insurance policy, an amount that Lombardi conceded Allstate previously had paid to him. She noted that this Court had issued its *Pogorilich* decision before the arbitrators had issued their award to Lombardi.

Thereafter, Allstate moved for summary judgment in all the aforementioned actions, relying upon an unsigned and unsworn affidavit that its by-now-deceased arbitration attorney purportedly had prepared and agreed to sign but never did so. The same motion justice who had denied Lombardi's motions granted Allstate's motions for summary judgment, stating that the judgment confirming the arbitration was void because it was contrary to this

Court's holding in *Pogorilich*. Ultimately, final judgment entered for Allstate in all the consolidated cases.

On his appeal to this Court, Lombardi argues that the motion justice erred in concluding that the judgment confirming the arbitration was void. He contends that a valid judgment entered and that Allstate negligently sat on its rights by failing to raise the *Pogorilich* case either before the arbitrators or before the Superior Court in the confirmation proceeding. Allstate, he contends, elected not to defend itself in the underlying action before the arbitration panel and in the confirmation action before the Superior Court. Therefore, he argues, it should not have been allowed to obtain relief at a later date when it was negligent in failing to raise these arguments at the proper time.

Allstate counters that the judgment confirming the arbitration award was a nullity because Allstate repeatedly had offered the policy limits to Lombardi and ultimately paid the same to him in final settlement of his UIM claims against Allstate. Allstate argues that the Superior Court correctly granted summary judgment in its favor because its policy-limits settlement of Lombardi's UIM claim was appropriate and because Lombardi still had recourse against Woloohojian for any additional tort damages he may have incurred. Allstate also suggests that it lacked proper notice of the court proceedings when Lombardi sought to confirm the arbitration award, thereby depriving the court of personal jurisdiction and rendering the judgment void.

Both parties concede that the underlying material facts are not in dispute. With no factual issues in dispute, the motion justice's task was to determine whether Allstate was entitled to summary judgment as a matter of law. *See Superior*

*Boiler Works, Inc. v. R.J. Sanders, Inc.*, 711 A.2d 628, 631–32 (R.I.1998).

### Analysis

Rule 60(b) of the Superior Court Rules of Civil Procedure permits a party to seek relief from a judgment by filing a separate independent action—even if it files the independent action more than one year after the entry of the judgment. *See Reynaud v. Koszela*, 473 A.2d 281, 285 (R.I.1984). Rule 60(b)(4) allows relief from a judgment if "the judgment is void." "However, '[a] judgment is not void merely because it is erroneous.'" *Jackson v. Medical Coaches*, 734 A.2d 502, 506 (R.I. 1999) (per curiam) (quoting 11 Charles A. Wright, et al., *Federal Practice and Procedure* § 2862 at 326 (1995)); *see also Hoult v. Hoult*, 57 F.3d 1, 6 (1st Cir.1995). A party may not avail itself of the grounds set forth in Rule 60(b)(4) to vacate a judgment on the basis of mere errors of law committed by a trial justice, unless the court entering the judgment " 'lacked jurisdiction *or* in circumstances in which the court's action amounts to a plain usurpation of power constituting a violation of due process.' " *Hoult*, 57 F.3d at 6; *see also Lubben v. Selective Service System Local Board No. 27*, 453 F.2d 645, 649 (1st Cir.1972). Previously, we have noted that courts also have held judgments void when they were "procured through fraud or collusion." *Medeiros v. Hilton Homes, Inc.*, 122 R.I. 406, 411 n. 2, 408 A.2d 598, 601 n. 2 (1979). In addition, default judgments are void if the moving party does not comply with the requirements for providing notice of the pending entry of the default. *Id.* "A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack." *Lubben*, 453 F.2d at 649.

Here, regardless of whether the Superior Court erred on the merits when it entered a judgment that confirmed the arbi-

trators' award of prejudgment interest in excess of the Allstate policy's limits, Allstate may not obtain relief from such a judgment merely because the Superior Court may have committed a legal error on the merits when it entered that judgment. That judgment was not void merely because it may have been erroneously entered on its merits. Although Allstate may have prevailed on its claim of error if it had opposed the confirmation petition or challenged the confirmation of the arbitration award on direct appeal, it negligently failed to avail itself of such remedies despite having received proper notice of the confirmation petition. Consequently, the Superior Court's motion justice erred in this case when she concluded that the earlier judgment was void merely because it confirmed an arbitration award that included prejudgment interest.[2] But even were we to assume, arguendo, that the court had erred when it confirmed the arbitration award and entered the final judgment against Allstate, that error alone did not render the judgment void pursuant to a Rule 60 motion or an independent action.

■ In addition, Allstate's claim that the judgment was void because it lacked proper notice of the proceeding where Lombardi sought to confirm the arbitration award also must fail. As an initial matter, Allstate failed to argue any lack-of-service or lack-of-personal-jurisdiction grounds in support of its summary-judgment motion, thereby waiving any of these potential bases for upholding the summary judgment here. *See, e.g., Rhode Island Hospital Trust National Bank v. de Beru,* 553 A.2d 544, 547 (R.I.1989). Furthermore, it appears on this record that Lombardi fully complied with the applicable statute, G.L.1956 § 10–3–11, governing notice for the kind of award-confirmation proceeding at issue here.[3] By serving the cover letter, confirmation petition, and notice of the award-confirmation hearing upon Allstate's arbitration attorney, Lombardi properly notified Allstate via its attorney of its opportunity to challenge the proposed confirmation of the award.

■ Allstate's contention on appeal that it never received actual notice of the award-confirmation hearing, or that its failure to attend the hearing and raise meritorious defenses resulted from excusable neglect, lacks any evidentiary support.

---

**2.** Contrary to Allstate's contention, this Court's ruling in *Allstate Insurance Co. v. Pogorilich,* 605 A.2d 1318 (R.I.1992), does not stand for the proposition that an arbitration award cannot include prejudgment interest in excess of the limits of an insured's uninsured motorist (UIM) coverage. Rather, all that *Pogorilich* held was that when arbitrators have been asked to decide the amount that the injured parties are entitled to recover *from the tortfeasor,* the uninsured motorist carrier for the injured parties cannot be required to pay more than the policy limits of the coverage. But when the arbitrators have been asked to determine the amount that the injured parties are entitled to recover *from the UIM insurer,* then the arbitrators can award prejudgment interest in excess of the policy limits. *Id.* at 1321; *see also Asermely v. Allstate Insurance Co.,* 728 A.2d 461, 463 & n. 4

(R.I.1999); *Sentry Insurance Co. v. Grenga,* 556 A.2d 998 (R.I.1989). Thus, the motion justice's misplaced reliance upon *Pogorilich* as requiring the entry of a judgment in favor of Allstate was itself erroneous.

**3.** General Laws 1956 § 10–3–11 provides:

"**Order confirming award.**—At any time within one year after the award is made, any party to the arbitration may apply to the court for an order confirming the award, and thereupon the court must grant the order confirming the award unless the award is vacated, modified or corrected, as prescribed in §§ 10–3–12—10–3–14. *Notice in writing of the application shall be served upon the adverse party or his attorney ten (10) days before the hearing on the application.*" (Emphasis added.)

Only statements of counsel *on appeal* support Allstate's lack-of-notice and excusable-neglect claims, and such statements do not constitute evidence and are not part of the record. *See Wood v. Ford,* 525 A.2d 901, 903 (R.I.1987); *State v. Brown,* 106 R.I. 235, 238, 258 A.2d 273, 275 (1969). The record provides no indication of precisely when Allstate's arbitration attorney became ill or whether Allstate's failure to respond to the award-confirmation petition—and to the various orders and judgments that thereafter entered—resulted from excusable neglect. More importantly, Allstate never argued to the Superior Court that the death or illness of its arbitration attorney excused its neglect in failing to oppose the confirmation petition. "In reviewing a summary-judgment award, however, we consider only those issues that were properly presented before the trial court." *Ludwig v. Kowal,* 419 A.2d 297, 302 (R.I.1980). Thus, a party may not advance new theories or raise new issues on appeal merely to secure a reversal of the trial court's determination. *Id.* Here, as in *Ludwig,* Lombardi's motion for summary judgment "required a sworn factual rebuttal" by Allstate. *Id.* at 303. Yet "[t]his [it] failed to supply." *Id.* "The neglect of counsel in the proceedings below is imputed to [the lawyer's] client." *Id.* at 304.

We conclude that Allstate did not adequately rebut its alleged negligence in connection with the entry of final judgment against it—namely, its failure to oppose the confirmation petition and appeal from the judgment that entered in that proceeding. Allstate's position to the contrary enjoys no support in the record. Allstate never argued to the Superior Court, as the dissent suggests, that its arbitration attorney "was then suffering from what was a terminal cancer" when Lombardi petitioned to confirm the arbitration award, and such a conclusion is not supported by any competent evidence in the record. The same is also true for the suggestion that Allstate's arbitration attorney "believed the claim had been disposed of by the settlement." The mere possibility that Allstate's failure to respond to Lombardi's confirmation petition was linked in any way to the asserted ill health of its attorney or her supposed belief that Lombardi's claim for prejudgment interest against Allstate had been settled when Lombardi accepted Allstate's $25,000 check enjoys no evidentiary support whatsoever from any competent source in this record. Rather, all that we have is the same vague and unsworn statements of counsel that Allstate proffered to the Superior Court—statements that, as we have said over and over again, cannot be relied upon to support or rebut a properly documented motion for summary judgment. Moreover, even if the statements of counsel on appeal about the alleged illness of Allstate's arbitration attorney had been properly sworn to and substantiated, they tell us nothing about what the timing of this illness was relative to the filing and service of the petition to confirm the arbitration award and to the various court orders and judgments that followed in its wake, much less do they explain why this attorney's asserted illness absolved Allstate from its admitted negligence in failing to respond to these court filings for a period that exceeded well over one year. Although it was certainly possible that the illness and subsequent death in 1998 of Allstate's arbitration attorney might have formed the basis for a credible showing of excusable neglect on the part of Allstate in 1992 and 1993, it made no such argument or showing to the Superior Court; instead it has relied solely on the vague, conclusory, unsworn, and unsupported statements of its counsel on appeal to plaster over all the cracks, crevices, and gaping holes in the porous evi-

dentiary foundation for its independent relief-from-judgment petition that it slapped together for the Superior Court.

■ Our conclusion that Allstate received proper notice of Lombardi's award-confirmation proceeding becomes critical when considering Allstate's contention that Lombardi had released it from any further obligations on the underlying UIM claim because of Lombardi's acceptance and negotiation of Allstate's $25,000 check that it had paid to him in "final settlement" of his claims. In its independent action to obtain relief from the judgment confirming the arbitrators' award, Allstate averred that before the arbitration award had been confirmed, Lombardi already had received full satisfaction of Allstate's maximum liability under the policy's $25,000 UIM liability limit and that Lombardi had accepted its tender of the policy limits as a final settlement of his UIM claim. In response, Lombardi conceded that he received the $25,000 payment and that he had accepted and negotiated a check for that amount from Allstate. He also did not contest the fact that it contained a statement on its face indicating that it was in "final settlement" for all his UIM claims against Allstate arising out of the 1986 accident. Under these circumstances, Allstate argues, Lombardi must be deemed to have accepted this payment in full satisfaction of his claim against Allstate.

■ Notwithstanding the underlying merit of these contentions,[4] Allstate's pre-

4. Our previous decisions on this subject adhere to the widely-accepted common law rule that, "where a dispute has arisen between the parties as to the amount due,—the creditor's taking of a check for less than the amount he claims to be due operates to extinguish the debt." 1 Henry J. Bailey & Richard B. Hagedorn, *Brady on Bank Checks: The Law of Bank Checks* § 4.12 at 4–40 to 4–41 (rev. ed.1997); *see also Lamoureaux v. Merrimack Mutual Fire Insurance Co.*, 751 A.2d 1290, 1293 (R.I.2000); *Neo Sicilia Loan Co. v. Perry*, 57 R.I. 441, 444, 190 A. 457, 459 (1937); *Hull v. Johnson*, 22 R.I. 66, 68, 46 A. 182, 182–83 (1900); Vitauts M. Gulbis, Annotation, *Modern Status of Rule That Acceptance of Check Purporting To Be Final Settlement of Disputed Amount Constitutes Accord and Satisfaction*, 42 A.L.R.4th 12, 18 (1985) ("It is widely accepted, as a general proposition, that a creditor's acceptance of a check explicitly tendered as payment in full of an unliquidated or disputed obligation discharges the underlying obligation by accord and satisfaction."). Under this rule, a creditor who wishes to claim a higher disputed amount should return the check; but the act of cashing or negotiating the check binds the creditor and operates as an "accord and satisfaction" on the underlying disputed obligation.

Although Rhode Island's statutory law of commercial paper does not expressly deal with the effect of a check offered "in full payment" of an underlying debt, certain provisions therein tend to support this traditional rule. *See, e.g.,* G.L.1956 § 6A–3–112(1)(f) (providing that negotiability of an instrument is not affected by "[a] term in a draft providing that the payee by indorsing or cashing it acknowledges full satisfaction of an obligation of the drawer"); G.L.1956 § 6A–1–103 ("Unless displaced by the particular provisions of title 6A, the principles of law and equity * * * shall supplement its provisions."). Section 6A–1–207, for example, provides that "[a] party who *with explicit reservation of rights* performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved." (Emphasis added.) *See Strauss, Factor, Hillman & Lopes, P.C. v. Kohler General Corp.*, 1987 WL 257409 (R.I. Dist.Ct., 1987) (applying § 6A–1–207 and permitting reservation of right to proceed for disputed balance); *but see Sarra Engineering Co. v. Promac, Inc.*, 1999 WL 485704, at *3 (R.I.Super. June 16, 1999) (noting split of authority as to effect of § 6A–1–207). In this case, of course, Lombardi never explicitly reserved his right to claim the disputed balance in excess of the $25,000 check; thus, § 6A–1–207's protections would not apply.

Finally, the 1990 version of the Uniform Commercial Code (Rhode Island has adopted the 1962 version, with some minor variations) contains a provision on "Accord and Satisfac-

vious negligence in failing to contest the entry of the challenged judgment still proves fatal to the viability of its independent action seeking relief from that judgment. A party seeking relief from a judgment via an independent action in equity must satisfy all the following traditional elements: "(1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) *the absence of fault or negligence on the part of the defendant;* and (5) the absence of any adequate remedy at law." *Clark v. Dubuc,* 486 A.2d 603, 605 n. 3 (R.I.1985) (quoting *Paul v. Fortier,* 117 R.I. 284, 287, 366 A.2d 550, 552 (1976)) (Emphasis added.); 12 *Moore's Federal Practice* ¶ 60.82[1]-[2] at 60–230 to 60–231 (3d ed.1999). The above underscored fourth element reflects the traditional principle that equitable relief is limited to situations in which the party seeking this remedy presents itself to the court with "clean hands." *See, e.g., Opie v. Clancy,* 27 R.I. 42, 50, 60 A. 635, 638 (1905) ("It must clearly appear to the court that it would be contrary to good conscience to allow the judgment to be enforced; in other words, a meritorious defense must be alleged and proved; and it must appear that the accident was unavoidable, or in no way attributable to the negligence of the party seeking equitable relief."); *see also Carteret Savings & Loan Association v. Jackson,* 812 F.2d 36, 39 (1st Cir.1987) ("[A]n equitable action in another forum presupposes absence of fault or negligence.").

Here, by its own admissions, Allstate negligently failed to oppose Lombardi's petition to confirm the arbitration award de-

spite having received competent notice of this proceeding. Moreover, not only did Allstate fail to show either the absence of any negligence or of excusable neglect on its part, but it plainly admitted its "glaring error" in not responding to the confirmation petition that Lombardi had properly served upon its attorney. Moreover, it failed to present any competent evidence that, if believed, would have established that its neglect was excusable. As a result, it was unable to satisfy the traditional requirements of an independent action in equity that would have entitled it to obtain relief from the judgment. Consequently, the court erred in vacating the original judgment that entered against Allstate.

**Conclusion**

For these reasons, we vacate the Superior Court's summary judgment, sustain Lombardi's appeal, and remand the papers to the Superior Court with directions to enter judgments consistent with this opinion in favor of Lombardi in all of the pending consolidated actions.

BOURCIER, Justice, dissenting.

I would deny Lombardi's appeal and affirm the Superior Court's summary judgment in favor of Allstate. Accordingly, I am unable to join in the opinion of my colleagues, and respectfully dissent.

Peter J. Lombardi (Lombardi) was a passenger in a motor vehicle driven by Donna Grattage (Grattage) that was insured by Allstate Insurance Company (Allstate). Lombardi did not sue Grattage, but did file a negligence action against Richard J. Woloohojian (Woloohojian), the driver of the vehicle that struck the Grattage vehicle. Unfortunately for Lombardi, Woloohojian's insurer, American Universal Insurance Company, was placed in receiv-

tion by Use of Instrument," that squarely ad-

dresses this issue. *See* UCC § 3–311 (1990).

ership. Lombardi then sought underinsured and uninsured motorist coverage (UIM) damages from Allstate, which insured the Grattage vehicle. Allstate's often advertised "good hands," however, were nowhere to be seen, and Lombardi demanded arbitration under Allstate's policy.

Before the arbitration proceedings began, Allstate offered Lombardi $25,000, the full limit of its UIM coverage. He rejected the offer and demanded that Allstate pay him, in addition to the $25,000, interest on that amount from the day of the collision, May 30, 1986. Allstate refused, and the matter proceeded to arbitration. At the time of Allstate's offer to pay Lombardi the full amount of its UIM coverage and at the time of Lombardi's insistence upon receiving prejudgment interest, this Court in *Allstate Insurance Co. v. Pogorilich*, 605 A.2d 1318, 1321 (R.I. 1992), had ruled that prejudgment interest in excess of the limits of Allstate's uninsured/underinsured motorist coverage was not permitted.

After arbitration, the arbitrators, on August 5, 1992, apparently unaware of our previous holding in *Pogorilich*, awarded Lombardi an amount in excess of Allstate's UIM policy limits and $29,000 in prejudgment interest.

Following the arbitration award, Allstate tendered a $25,000 check to Lombardi's attorney, that being the full amount of its UIM coverage, but in accordance with our *Pogorilich* holding, tendered no prejudgment interest amount on the $25,000 payment. The Allstate check tendered to Lombardi's attorney was made payable to the attorney and Lombardi and contained in bold lettering the following notice:

> "IN FINAL SETTLEMENT OF ANY AND ALL CLAIMS FOR BODILY INJURY UNDER UNINSURED MOTORIST COVERAGE ARISING FROM ACCIDENT ON MAY 30, 1986."

Both Lombardi and his attorney endorsed and cashed Allstate's check. I would conclude, as did the Superior Court hearing justice, that when Lombardi accepted Allstate's check, without condition or reservation, and thereafter cashed the check and retained its proceeds, he thereby released Allstate from any and all claims that he then had against it arising from the May 30, 1986 accident. That release absolved Allstate of any claim Lombardi had, and barred him from attempting to pursue any claim or action originating from the May 30, 1986 accident. *See Lamoureaux v. Merrimack Mutual Fire Insurance Co.*, 751 A.2d 1290, 1293 (R.I.2000); *Collins v. Fairways Condominiums Association*, 592 A.2d 147, 148 (R.I.1991); *Harrington v. Aetna Life and Casualty Co.*, 441 So.2d 1255, 1256–57 (La. Ct.App.1983); *Butters v. Kane*, 347 A.2d 602, 604 (Me.1975).

Despite his having accepted and endorsed Allstate's $25,000 check, which was in full and final settlement of all his claims against Allstate arising from the 1986 accident, Lombardi, three months later, petitioned the Superior Court to confirm the arbitration award, which was based upon his now settled and discharged claim, and sought additional money for prejudgment interest from Allstate. Unfortunately, the attorney handling the claim for Allstate, who obviously believed that the claim had been disposed of by the settlement, and, who was then suffering from what was a terminal cancer, did not respond to Lombardi's petition and failed to appear and object to its being granted on the hearing day. The hearing justice was not made aware of the previous settlement and was obviously unaware of our holding in *Pogorilich*. In the absence of any objection from Allstate, the hearing justice granted

Lombardi's petition to confirm the arbitration award and entered prejudgment interest on the award. A copy of the judgment was mailed to Allstate's attorney, who was then dying of cancer, and she failed to respond to the judgment.

Thereafter, on March 7, 1994, Lombardi caused an execution on the judgment to issue. Allstate continued to refuse to pay any amount in excess of the $25,000 policy limit it had previously paid to Lombardi, and on November 4, 1994, Lombardi filed a civil action for debt-on-judgment against Allstate (later consolidated with this action) for the approximate sum of $46,000. On December 20, 1994, when Allstate failed to answer Lombardi's debt-on-judgment action, he requested an entry of default. Before any default judgment could enter, Allstate filed its answer, on January 13, 1995, and a new attorney entered his appearance for Allstate. Allstate suggested that its failure to oppose the confirmation petition was caused by the different law firms handling different portions of the claims arising from the accident, as well as by the intervening illness and death of Allstate's arbitration hearing attorney.

Seeking relief from the judgment confirming the arbitration award and relief from the default in the debt-on-judgment action, Allstate then filed an independent equitable action on March 14, 1995, pursuant to our holding in *Paul v. Fortier,* 117 R.I. 284, 366 A.2d 550 (1976). In its complaint, Allstate asserted that the judgment confirming the arbitration award was a nullity because not only had it offered the $25,000 policy limit to Lombardi before the arbitration began, but also, because thereafter, Lombardi had accepted, endorsed and cashed a check from Allstate for $25,000, which represented the full amount of Allstate's liability to him and which contained clear warning language on its face stating that payment was "[i]n final settle-

ment of any and all [UIM] claims." Moreover, Allstate averred that Lombardi still had recourse in his pending action against Woloohojian for any remaining damages that he may have suffered in the May 30, 1986 accident that he believed had not been compensated for in the $25,000 UIM settlement.

The Superior Court, on motion, consolidated all three actions—Lombardi's underlying confirmation-of-the-arbitration-award lawsuit, Lombardi's debt-on-judgment action, and Allstate's independent equitable relief-from-judgment petition. Lombardi then filed motions for summary judgment on his debt-on-judgment action and on Allstate's equitable petition for relief from judgment. A Superior Court motion justice denied Lombardi's motions. She found that the judgment confirming the arbitration award was void because this Court's decision in *Pogorilich* established that Allstate could be liable only for the limits of its insurance policy, an amount that Lombardi conceded Allstate previously had paid to him. She also noted that this Court had issued its *Pogorilich* opinion before the arbitrator's award was entered in favor of Lombardi. Thereafter, Allstate moved for summary judgment on its independent equitable action, seeking relief from the execution that had issued on the final judgment entered following completion of the arbitration proceeding. The motion justice, after a hearing, granted Allstate's motions for summary judgment on the basis that the judgment confirming the arbitration was void because it was contrary to this Court's holding in *Pogorilich.* Ultimately, judgment entered for Allstate in all the consolidated cases.

In his appeal to this Court, Lombardi argues that the motion justice erred in concluding that the judgment confirming the arbitration award was void. He contends that a valid judgment entered and

that Allstate sat on its rights by negligently failing to raise the *Pogorilich* case or its accord-and-satisfaction defense either before the arbitrators or before the Superior Court in the arbitration confirmation proceeding. Allstate, he contends, also was negligent in failing to oppose his confirmation petition. Therefore, he argues that Allstate should not have been allowed to obtain relief from the final judgment in the arbitration proceeding because it had been negligent in failing to raise any objection to the entry of that final judgment. Of course, Lombardi conveniently overlooks the undeniable fact that he had previously released all of his claims against Allstate, including his arbitration judgment claim, and was not entitled to any additional monies from Allstate. Like the store customer who tenders the young store cashier a $20 bill to pay for a $10 item and who receives back $30 in change, Lombardi or his attorney ought to have informed the arbitration confirmation hearing justice about the previous total settlement, just as the store customer ought to have informed the cashier of his or her obvious error.

Allstate, in its independent equitable action to set aside Lombardi's judgment, asserted that the judgment confirming the arbitration award was a nullity because Lombardi had endorsed its $25,000 settlement check to him and that the check clearly stated on its face that it was paid in final settlement of all of Lombardi's claims, including its UIM claim against Allstate arising out of the 1986 accident. Thus, Allstate argues, the Superior Court correctly granted summary judgment in its favor on its independent equitable action to set aside the judgment-especially in light of the fact that shortly after Lombardi had accepted its settlement check, Allstate's lawyer, who had been handling the arbitration claim, died, thereby explaining and excusing its failure to object to Lombardi's confirmation petition and to the various orders and judgments that entered following that proceeding.

Both parties concede that the underlying material facts, as above related, were not in dispute at the hearing held on Allstate's motion for summary judgment. Thus, with no factual issues in dispute, the motion justice's only task was to determine whether Allstate was entitled to summary judgment on its independent equitable action seeking to set aside the judgment confirming the arbitrator's award.

### Analysis

On the record before us in this case, I agree with my colleagues who opine that the hearing justice erred in concluding as reason for entering summary judgment in favor of Allstate that the judgment in question was void because it was contrary to our holding in *Pogorilich*. The judgment was not void, but yet was subject to challenge and subject to being set aside pursuant to Rule 60(b)(5) of the Superior Court Rules of Civil Procedure or, as in this case, by an independent equitable action. That latter form of relief had been available to a litigant long before the adoption of our civil rules of procedure, and has been incorporated therein. *Paul,* 117 R.I. at 287, 366 A.2d at 552. In that case, the late Justice Kelleher wrote, "[t]hus, we hold that an independent action may be based upon assertions of inadvertence, surprise or excusable neglect as well as fraud." *Id.* at 290, 366 A.2d at 553. Later, in *In re Lisa Diane G.,* 537 A.2d 131, 133 (R.I.1988), he wrote that an independent civil action could be employed to seek the identical relief that could not be afforded by Rule 60(b) because of its one year limitation. Rule 60(b) was later amended in 1995 to remove the one year restriction with respect to sections (4), (5), and (6) in 60(b), replacing that restriction with a "reasonable time" limitation.

In this case, there is no question but that *Allstate,* if it had filed a timely Rule 60(b)(5) motion for relief from Lombardi's final arbitration judgment, such relief would have been mandated. *Vaughan v. Nationwide Mutual Insurance Co.,* 702 A.2d 198 (D.C.1997). Relief from a judgment pursuant to Rule 60(b)(5) is appropriate where the limit of a policy has already been paid in final settlement of the underlying claim. *Vaughan,* 702 A.2d at 206. Here, Lombardi does not dispute that he expressly released Allstate from any further liability to him when he accepted the $25,000 check "[i]n final settlement" of his UIM claims against Allstate.

Moreover, Allstate appears to have more than adequately rebutted its alleged negligence in connection with the final judgment—and thereby excused its failure to oppose the confirmation petition and to appeal from the judgment that had entered in that proceeding. It explained that its arbitration attorney had died after the arbitration hearing had concluded and that, as a result, it never received actual notice of the confirmation proceedings and the various orders and forms of judgment that Lombardi had sent to the deceased attorney's office in time for Allstate to object thereto or otherwise to oppose the entry of judgment or to appeal therefrom in a timely manner. Accordingly, I believe that the hearing justice properly vacated the earlier judgment in favor of Lombardi and properly entered summary judgment in favor of Allstate, but that she did so for a wrong reason. On the facts and circumstances that were presented to the motion justice, I conclude that it was "no longer equitable that the judgment should have prospective application." Rule 60(b)(5).

This Court certainly has the prerogative to affirm a decision made by a trial justice on grounds different from those relied upon by the trial justice. *Ahlburn v. Clark,* 728 A.2d 449, 452 (R.I.1999); *Thibodeau v. Metropolitan Property and Liability Insurance Co.,* 682 A.2d 474, 475 (R.I.1996) (citing *Andersen v. Sundlun,* 625 A.2d 213, 215 (R.I.1993)("Supreme Court can affirm the grant of summary judgment on a basis not relied on by the Court below if supported by the law and the record")). In this case, Allstate was certainly entitled to relief from the judgment confirming the arbitration award because, pursuant to Rule 60(b)(5), the judgment had been previously "satisfied, released, or discharged" and it was "no longer equitable that the judgment should have prospective application." In its independent equitable action, Allstate averred that before the challenged judgment had entered, Lombardi already had received full satisfaction of Allstate's maximum liability to Lombardi under the $25,000 UIM liability limit in the insurance policy and had released Allstate from all his 1986 accident claims. Lombardi conceded that he received the $25,000 payment and also conceded that he had accepted and negotiated the check for that amount from Allstate. He has never contested the fact that the check contained a statement on its face indicating that it was "[i]n final settlement" for all his UIM claims against Allstate arising out of the 1986 accident. Under these circumstances, Allstate was clearly entitled to summary judgment on its equitable action to set aside the arbitration confirmation judgment and should not be denied that relief simply because the motion hearing justice gave a wrong reason for doing so.

For all the reasons above set out, I would affirm the Superior Court's entry of summary judgment in favor of Allstate, because Lombardi's judgment against Allstate had been previously satisfied, released and discharged, and I would affirm the denial of Lombardi's motion for sum-

mary judgment on his debt-on-judgment action and deny his appeal.