Joyce Wheeler                          :

v.                          :

Encompass Insurance Company.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2011-313-Appeal.
(PM 11-2250)
(Dissent begins on Page 11)

Joyce Wheeler                    :

v.                              :

Encompass Insurance Company.     :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

### O P I N I O N

**Justice Goldberg, for the Court.**  Joyce Wheeler (plaintiff or Wheeler) appeals from a Superior Court order granting in part and denying in part her motion to confirm an arbitration award against Encompass Insurance Company (defendant or Encompass).  For the reasons set forth herein, we vacate the order and direct that the arbitration award be reinstated in its entirety.

### Facts and Travel

The facts and travel of this case are not in dispute.  On October 19, 2007, plaintiff was injured in a motor-vehicle collision with an underinsured driver (tortfeasor).  The tortfeasor was insured by Progressive Insurance Company (Progressive) with a $25,000 liability limit for bodily injury.  Progressive did not contest liability and paid plaintiff the policy limits.  The plaintiff then sought recovery for personal injuries pursuant to the uninsured/underinsured motorist provisions (UM/UIM coverage) of her Encompass policy.  That policy provided UM/UIM coverage up to $100,000.

Because Encompass contested the nature and extent of plaintiff's injuries—apparently

based on her refusal of treatment at the scene and a one-week delay in seeking medical treatment—the parties agreed to submit the dispute to binding arbitration before a panel of three arbitrators.[1] The arbitrators found that plaintiff's damages amounted to $150,000 and, further, that the tortfeasor had paid $25,000 of those damages and defendant had paid $5,000 pursuant to the Medical Payment provision of plaintiff's policy. The arbitrators concluded that plaintiff was entitled to prejudgment interest on the $25,000 tortfeasor payment until the date it was paid and on the outstanding $120,000 in damages. See Metropolitan Property and Casualty Insurance Co. v. Barry, 892 A.2d 915, 924 (R.I. 2006) ("[A]ny total damages ascertained in a UM arbitration case will accrue prejudgment interest from the date of the injury until the date of any partial payment; and, after that calculation is made by the arbitrator(s), prejudgment interest shall continue to accrue on the balance until the judgment is paid."). Based on those calculations, the arbitrators issued a total award of $172,750.[2]

The plaintiff then sought confirmation of the arbitration award in the Superior Court.[3]

_____

[1] Section b.1 of the policy's arbitration clause states:

"If we and a **covered person** do not agree:

"a. Whether that **covered person** is legally entitled to recover damages; or

"b. As to the amount of damages which are recoverable by that **covered person**;

"from the owner or operator of an uninsured/underinsured motor vehicle then, if both parties agree, the matter may be arbitrated."

[2] There is no record of the question(s) presented to the arbitration panel.

[3] Encompass made a $100,000 payment to plaintiff, and plaintiff acknowledged receipt of this amount in her petition to the Superior Court. The plaintiff's petition represents her pursuit of the full amount of the arbitration award.

The defendant filed an objection to that petition,[4] arguing that plaintiff's UM/UIM policy provided $100,000 maximum coverage and that Encompass had paid the policy limits in accordance with the insurance contract. The defendant argues that, under Rhode Island law, plaintiff was not entitled to recover any amounts from Encompass in excess of her policy limits. Accordingly, defendant objected to that portion of the arbitration award that purported to declare defendant liable for damages that she was not legally entitled to recover from Encompass.

The Superior Court considered the petition and the objection thereto at a May 26, 2011 hearing. Counsel for plaintiff argued that arbitrators are free to render an award in excess of policy limits against an insurer in circumstances in which they are asked to determine an insured's damages vis-à-vis the insurer and, according to plaintiff, this precisely is the issue posed to the panel of arbitrators in this case. See Allstate Insurance Co. v. Lombardi, 773 A.2d 864, 870 n.2 (R.I. 2001) ("[W]hen the arbitrators have been asked to determine the amount that the injured parties are entitled to recover from the UIM insurer, then the arbitrators can award prejudgment interest in excess of the policy limits." citing Allstate Insurance Co. v. Pogorilich, 605 A.2d 1318, 1321 (R.I. 1992)). Encompass, on the other hand, alleged that the arbitration in this case was entered into strictly in accordance with the terms of the insurance policy. According to Encompass, this was not litigation between Wheeler and Encompass and, to that end, plaintiff is not entitled to recover damages in excess of the limits of her insurance policy.

After hearing from both parties, the trial justice issued a bench decision. In so doing, he determined that the matter was controlled by Pogorilich. In that case, this Court determined that "[a]n uninsured/underinsured motorist policy limit may not be expanded to include prejudgment interest even though the injured party may be entitled to recover such prejudgment interest from

---

[4] Although entitled "Defendant Encompass Insurance's Limited Opposition" to the petition to confirm the award, we consider this pleading an objection to the petition.

- 3 -

the tortfeasor." Pogorilich, 605 A.2d at 1321. Further, the trial justice concluded that the remaining cases cited by the parties were distinguishable from the case before him.[5] Therefore, the trial justice "sustain[ed] the objection to the petition to confirm to the extent that the award exceeds the policy," but he confirmed the award "in all other respects." An order entered that modified the award of the arbitrators; it vacated that portion of the award that was in excess of the $100,000 policy limit and confirmed the remainder of the arbitration award. Specifically, the order stated that the petition to confirm the award was denied "to the extent that the Arbitration Award exceeds the applicable insurance policy limits of $100,000" and, "[t]o the extent that the Award purports to award the Plaintiff any amount in excess of the policy limits of $100,000, that portion of the Award is hereby vacated." The plaintiff appealed.

## Standard of Review

Judicial review of arbitration awards is "statutorily prescribed and is limited in nature." Buttie v. Norfolk & Dedham Mutual Fire Insurance Co., 995 A.2d 546, 549 (R.I. 2010) (quoting North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers, 945 A.2d 339, 344 (R.I. 2008)). The grounds for vacating or otherwise modifying an arbitration award are found in the Arbitration Act, chapter 3 of title 10. General Laws 1956 § 10-3-12 sets forth the narrow conditions that mandate that an arbitration award be vacated:

---

[5] In his bench decision, the trial justice erroneously, we conclude, rejected this Court's holding in Allstate Insurance Co. v. Lombardi, 773 A.2d 864, 870 & n.2 (R.I. 2001), in which we limited the reach of Allstate Insurance Co. v. Pogorilich, 605 A.2d 1318 (R.I. 1992). The trial justice mistakenly concluded that Lombardi was based on the premise that the Superior Court made a mistake on the merits, which led to its award of interest in excess of the policy. See Lombardi, 773 A.2d at 870 ("Allstate may not obtain relief from [this] judgment merely because the Superior Court may have committed a legal error on the merits when it entered that judgment."). In addition, the trial justice noted that Pogorilich did not apply in Skaling v. Aetna Insurance Co., 742 A.2d 282 (R.I. 1999), because Aetna Insurance breached the insurance contract in that case. Id. at 291-92 (citing Pogorilich, 605 A.2d at 1321).

"(1) Where the award was procured by corruption, fraud or undue means.

"(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.

"(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.

"(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

Meanwhile, § 10-3-14 directs the courts to modify or correct an award under the following limited circumstances:

"(a) In any of the following cases, the court must make an order modifying or correcting the award, upon the application of any party to the arbitration:

"(1) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.

"(3) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"(b) The order must modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

Generally, arbitration awards cannot be vacated or modified for errors of law and may be disturbed only in narrow circumstances. Aponik v. Lauricella, 844 A.2d 698, 703-04 (R.I. 2004) (citing Purvis Systems, Inc. v. American Systems Corp., 788 A.2d 1112, 1115 (R.I. 2002)). This Court will overturn an arbitration award "only if the award was 'irrational or if the arbitrator[s]

manifestly disregarded the law.'" Id. at 703 (quoting Purvis Systems, Inc., 788 A.2d at 1115). We hasten to add, however, that in passing on an appeal from an order confirming or vacating an arbitration award, this Court is not without authority to "make such orders * * * as the rights of the parties and the ends of justice require." Section 10-3-19.

**Analysis**

**I**

At the outset, we address a procedural hurdle. The plaintiff triggered the trial justice's review of the arbitration award by filing a petition to confirm the award. The procedure to be followed in those circumstances is well defined:

> "At any time within one year after the award is made, any party to the arbitration may apply to the court for an order confirming the award, and thereupon the court <u>must</u> <u>grant</u> the order confirming the award unless the award is vacated, modified or corrected, as prescribed in §§ 10-3-12–10-3-14. Notice in writing of the application shall be served upon the adverse party or his or her attorney ten (10) days before the hearing on the application." Section 10-3-11 (emphasis added).

The statutory directive is clear: a reviewing justice must confirm the award unless statutory grounds exist to warrant some other action.

In this case, the trial justice granted the petition to confirm the award in all respects save for that portion of the award that "purport[ed] to award the Plaintiff any amount in excess of the policy limits of $100,000"; the trial justice vacated this portion of the award, thereby reducing the amount awarded by the arbitration panel. We are convinced that the trial justice's decision had the practical effect of modifying the award. Section 10-3-14(a) unambiguously directs the courts to modify an award—"upon the application of any party"—only in limited circumstances. Neither party filed a motion to modify this award. However, Encompass did file an objection to plaintiff's petition to confirm the award. Therefore, before we address whether the trial justice's

- 6 -

modification of the award was proper, we first must determine whether Encompass's objection to plaintiff's petition to confirm satisfied the "application" component of § 10-3-14(a) necessary to trigger the modification inquiry. We conclude that it did.

Our decision in City of East Providence v. United Steelworkers of America, Local 15509, 925 A.2d 246, 253-55 (R.I. 2007), guides us in our inquiry. In that case, the union filed a motion to confirm an arbitration award; the city filed both a motion to vacate the award and an objection to the union's motion to confirm. Id. at 251. After the trial justice vacated the award, the union appealed, arguing that the city's motion to vacate was improper because it violated the waiver-of-appeals clause in the parties' collective bargaining agreement. Id. at 249, 252.

We explained that, even if the city's motion to vacate ran afoul of the waiver-of-appeals provision, "a motion to vacate is not a mandatory precursor to the vacation of an arbitration award when that award suffers from a defect identified within the statutes that govern arbitration * * *." City of East Providence, 925 A.2d at 253. We held that the trial justice properly undertook the inquiry into whether the award was subject to vacation because "the union's motion to confirm, standing alone, was sufficient to trigger the Superior Court's review of the award" and "[t]he city's objection constituted an 'application' to the reviewing court, and provided sufficient grounds to justify a continuation, under [G.L. 1956] § 28-9-18, of the inquiry that the motion to confirm set in motion under § 28-9-17." City of East Providence, 925 A.2d at 253, 254.

So it is here.[6] The plaintiff's petition to confirm the award triggered the trial justice's

---

[6] We recognize that City of East Providence v. United Steelworkers of America, Local 15509, 925 A.2d 246 (R.I. 2007), dealt with a trial justice's decision to vacate an arbitration award under G.L. 1956 § 28-9-18, while this case concerns the trial justice's modification of an award under G.L. 1956 § 10-3-14. However, this difference is immaterial to our analysis because chapter 9 of title 28 and chapter 3 of title 10 employ virtually identical language to define the contours of a trial justice's authority to confirm, modify, or vacate an arbitration award. As is pertinent here,

review of the award, and Encompass's objection provided sufficient grounds to warrant a continuation of the inquiry that plaintiff's petition to confirm set in motion. Therefore, we must squarely address the merits of the trial justice's modification of the arbitration award.

## II

Turning to the merits, we are convinced that the trial justice erred in modifying the arbitration award. Modification of an arbitration award is permitted only in limited circumstances:

> "[T]he court must make an order modifying or correcting the award, upon the application of any party to the arbitration:
>
> "(1) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> "(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.
>
> "(3) Where the award is imperfect in matter of form not affecting the merits of the controversy." Section 10-3-14(a).

As we explained in Paola v. Commercial Union Assurance Companies, 461 A.2d 935, 937 (R.I. 1983):

> "A trial justice has no power to modify an award unless there has

---

each chapter provides that, upon application for an order confirming an arbitration award, "the court must grant the order * * * unless the award is vacated, modified or corrected," § 10-3-11; see also § 28-9-17, and that the court must modify or vacate an award, "upon the application of any party," when the statutory grounds for modification or vacation are present. Section 10-3-12 (vacation); § 10-3-14 (modification); § 28-9-18 (vacation); § 28-9-20 (modification).

Moreover, we have recognized that chapter 9 of title 28 parallels chapter 3 of title 10 and that the two share many analogous provisions. See Romano v. Allstate Insurance Co., 458 A.2d 339, 341 n.2 (R.I. 1983) ("Although Belanger v. Matteson, 115 R.I. 332, 346 A.2d 124 (1975)[,] involved arbitration pursuant to the terms of a collective-bargaining agreement, the [C]ourt's reasoning remains applicable to the instant case as the statute governing labor arbitration awards[, § 28-9-18,] parallels the statute involved in the case at bar[, § 10-3-12]."); see also DelSignore v. Providence Journal Co., 691 A.2d 1050, 1052 n.6 (R.I. 1997) (comparing analogous sections of chapter 9 of title 28 and chapter 3 of title 10).

- 8 -

been miscalculation of figures, or mistake in description of property or person; or where the award is imperfect in form only; or where the arbitrator[s] made an award concerning a matter not before them unless such matter would not affect the merits of the decision regarding the submitted issues." (Emphasis added.)

In this case, we are mindful that there is no record of the arbitration proceeding that gave rise to this award, nor is there any evidence establishing the question that was submitted to the arbitration panel. Before this Court, the parties agreed that they did not submit a specific question or frame the issue for the panel; they also agreed that the insurance policy was not introduced for the arbitrators' consideration.[7] We do, however, have before us a carefully crafted award calculating the amount of prejudgment interest in accordance with this Court's holding in Barry, 892 A.2d at 923-24.

In modifying this award, the trial justice accepted defendant's contention that, in accordance with Pogorilich, arbitrators may not award prejudgment interest above policy limits. See Pogorilich, 605 A.2d at 1321. In effect, then, the trial justice modified the award based on his belief that the arbitrators had made an error of law. However, it is settled beyond a hint of contradiction that a mistake of law is not grounds for upsetting an arbitration award. See Aponik, 844 A.2d at 704; Purvis Systems, Inc., 788 A.2d at 1115; see also Westminster Construction Corp. v. PPG Industries, Inc., 119 R.I. 205, 210, 376 A.2d 708, 711 (1977) (in Rhode Island, a mistake of law "is not a ground for disturbing an award"). Therefore, this was not an appropriate ground on which the trial justice could modify the arbitration award.

After reviewing the record in this case, including with particularity the transcript of the

---

[7] The dissent faults the arbitrators and the majority for declining to apply the provisions of the insurance policy to the issues in this case. What is abundantly clear in this case is that neither a precise question nor the insurance policy was submitted to the arbitration panel. We are unwilling to vacate an arbitration award on the basis of an insurance policy that was not in evidence. Moreover, we decline to engage in the type of de novo review conducted by the dissent.

hearing, we can reach no other conclusion than that the hearing justice applied a de novo standard of review to the panel's award, decided that the panel had been incorrect in its application of the law, and modified the award to conform with the court's interpretation of the law. This, in our view, was error. Such a plenary review of an arbitration award cannot be countenanced in light of the carefully crafted and strictly circumscribed role of the judiciary under chapter 3 of title 10.[8] Because no grounds for modification or vacation of the award existed, the trial justice was obligated to confirm it.[9]

---

[8] We pause to note that the award was not affected by an error of law in the first place. The trial justice's mistaken reading of Lombardi led him to the conclusion that the panel committed an error of law. See footnote 5, supra. However, in Lombardi, 773 A.2d at 870 n.2, we made clear that

> "this Court's ruling in [Pogorilich] does not stand for the proposition that an arbitration award cannot include prejudgment interest in excess of the limits of an insured's uninsured motorist (UIM) coverage. Rather, all that Pogorilich held was that when arbitrators have been asked to decide the amount that the injured parties are entitled to recover from the tortfeasor, the uninsured motorist carrier for the injured parties cannot be required to pay more than the policy limits of the coverage. But when the arbitrators have been asked to determine the amount that the injured parties are entitled to recover from the UIM insurer, then the arbitrators can award prejudgment interest in excess of the policy limits."

See also Sentry Insurance Co. v. Grenga, 556 A.2d 998, 1000 (R.I. 1989) ("In this jurisdiction an arbitrator has the authority to award prejudgment interest in excess of the policy limits.").

Mindful that the issue submitted to the arbitrators is not before us, we note that, "[a]s long as the agreement to arbitrate is valid and the subject matter of the dispute is arbitrable, the arbitrator may frame the issues to be decided." Purvis Systems, Inc. v. American Systems Corp., 788 A.2d 1112, 1116 (R.I. 2002) (quoting Providence Teachers Union v. Providence School Committee, 440 A.2d 124, 128 (R.I. 1982)). Thus, we are satisfied that the arbitration panel was free to frame the issue before it. We deem it telling that the arbitrators carefully and correctly adhered to the formula promulgated by this Court in Metropolitan Property and Casualty Insurance Co. v. Barry, 892 A.2d 915, 923-24 (R.I. 2006). The panel's prejudgment interest computations were made from the prism of insurer liability, as Barry directs.

[9] The plaintiff also has alleged that Encompass breached the insurance contract and acted in bad faith. We are of the opinion that not only is this issue not properly before the Court, but also our decision reinstating the arbitration award has rendered this issue moot.

- 10 -

For the reasons stated herein, we vacate the order of the Superior Court. We remand the papers to the Superior Court with instructions to issue an order confirming the arbitration award.

**Justice Robinson, dissenting.** I readily acknowledge that the issues presented in this case are subtle and challenging; but, after long reflection, I remain unpersuaded by the reasoning of my colleagues, and I therefore must respectfully dissent.

The majority correctly recognizes that Encompass's objection to Ms. Wheeler's petition qualifies as an "application" under G.L. 1956 § 10-3-14(a). That objection triggered the trial justice's review of the award. See City of East Providence v. United Steelworkers of America, Local 15509, 925 A.2d 246, 253–55 (R.I. 2007). However, I believe that the majority's discussion of the merits misses the mark.

The parties had agreed in the contract of insurance to resort to arbitration with respect to the amount of damages recoverable by the insured from the tortfeasor. Yet, the arbitration panel decided the amount of the insurer's liability—an amount that exceeded the insured's policy limits.

Section 10-3-14(a)(2) expressly provides that a court "must make an order modifying or correcting the award * * * [w]here the arbitrators have awarded upon a matter not submitted to them." (Emphasis added.) I believe that the majority's analysis fails to deal with a critical fact—viz., that there is no evidence in the record that the parties ever agreed to submit to arbitration either (1) the issue of Encompass's liability to Ms. Wheeler or (2) the issue of whether or not the insurance policy limits could be disregarded. Therefore, I believe that the trial court correctly modified the award by focusing on the only piece of the award related to a properly arbitrable issue (viz., the panel's determination of the amount of damages suffered by

- 11 -

Ms. Wheeler as a result of the tortfeasor's actions) and then looking to Ms. Wheeler's policy limits (viz., $100,000) in order to determine Encompass's appropriate contractual liability.

## Analysis

In Rhode Island, "[a]rbitration is a creature of the contract between the parties * * *." State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 866 A.2d 1241, 1247 (R.I. 2005). Because of the contractual nature of arbitration, this Court has expressly recognized that "a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit." School Committee of North Kingstown v. Crouch, 808 A.2d 1074, 1078 (R.I. 2002) (internal quotation marks omitted).

The following principle is critical to my approach in this case: An arbitration panel "derives [its] jurisdiction from a mutual agreement of the parties to submit the matter to arbitration." Blackstone Valley Gas & Electric Co. v. Rhode Island Power Transmission Co., 64 R.I. 204, 223, 12 A.2d 739, 749 (1940) (emphasis added). Accordingly, "an arbitrator is powerless to arbitrate that which is not arbitrable in the first place." Crouch, 808 A.2d at 1078 (internal quotation marks omitted); see generally Bush v. Nationwide Mutual Insurance Co., 448 A.2d 782 (R.I. 1982).

The proper scope of the arbitration at issue in this case therefore must be determined by a contractual agreement between Encompass and Ms. Wheeler. See Bush, 448 A.2d at 784 ("[A] party is bound only to arbitrate those issues that he [or she] has consented to arbitrate."). The only evidence in this case regarding any agreement to arbitrate is the highly specific arbitration provision contained in the insurance policy. Indeed, Ms. Wheeler's appellate brief concedes this much, noting that the parties went to arbitration "[p]ursuant to the provisions of the insurance policy."

The arbitration clause in section b.1 of that insurance policy reads as follows:

> "1.  If [Encompass] and [Ms. Wheeler] do not agree:
>
> > "a. Whether [Ms. Wheeler] is legally entitled to recover damages; or
> >
> > "b. <u>As to the amount of damages which are recoverable by [Ms. Wheeler]</u>;
> >
> > <u>from the owner or operator of an **uninsured/underinsured** motor vehicle [i.e., the tortfeasor]</u> then, if both parties agree, the matter may be arbitrated."  (Emphasis added.)

As Ms. Wheeler states in her appellate brief, Encompass did not "question [the tortfeasor's] liability in this matter"; accordingly, subsection (a) of the above-quoted policy language did not apply.  The only remaining arbitrable subject matter was the discrete issue that is referenced in subsection (b): "the amount of [Ms. Wheeler's] damages which [were] recoverable * * * from the [tortfeasor]."

The arbitration panel's award, however, decided issues that the parties never agreed to arbitrate.  The panel's award reads in its entirety as follows:

> "FINDINGS OF FACT: Total damages sustained by Joyce Wheeler is $150,000.00.  Tortfeasor paid $25,000.00 on May 28, 2009 and Encompass Insurance paid $5,000.00 under the Medical Payment provision of the policy.
>
> "Joyce Wheeler is entitled to 19% interest on the $25,000.00 tortfeasor payment, which equals $4,750.00.  Joyce Wheeler is entitled to 40% interest on $120,000.00, which equals $48,000.00.
>
> "Total amount due the Plaintiff, Joyce Wheeler, from Encompass Insurance Company equals ONE HUNDRED AND SEVENTY TWO THOUSAND SEVEN HUNDRED AND FIFTY ($172,750.00) DOLLARS."

The first paragraph of the award decides the only arbitrable issue: the amount of damages suffered by Ms. Wheeler.  The final paragraph of the award, however, goes on to decide

Encompass's contractual liability—even though there is absolutely no evidence that the parties ever agreed to arbitrate that issue. Rather, it is clear from the language of the insurance policy that the only issue that could be arbitrated was the amount of damages which Ms. Wheeler could recover from the tortfeasor. Further, by awarding $172,750 to Ms. Wheeler from her insurer, the award also decides that the $100,000 policy limits do not apply. Again, there is absolutely no evidence that the parties ever agreed to arbitrate any issue regarding the policy limits.

To the extent that the arbitration panel's award decided issues beyond the discrete issues referenced in the insurance policy's arbitration clause, the arbitration panel issued an award "upon a matter not submitted to them." See § 10-3-14(a)(2). The trial court therefore was required by statute to "modify and correct the award, so as to effect the intent thereof and promote justice between the parties." See § 10-3-14(b). That is exactly what the trial court in this case did; focusing on the language of the insurance policy, it properly modified the award to reflect the insurance policy's clear $100,000 policy limits—the amount of insurance coverage that Ms. Wheeler had paid for.

By requiring the Superior Court to confirm the award, the majority is in effect ignoring the parties' express written agreement according to which just two issues were potentially appropriate for arbitration (only one of which is relevant to this case). The Court is approving a financial windfall for Ms. Wheeler; she paid policy premiums that would entitle her to up to $100,000 of coverage, yet the majority is allowing her to collect $172,750.[10] The majority reaches this conclusion even though we have held that "in no event" may a plaintiff's recovery under his or her own underinsured motorist policy exceed the limits of that policy's coverage. See Archambault v. Federal Insurance Co., 690 A.2d 1348, 1350 (R.I. 1997) (emphasis added).

---

[10] Encompass promptly paid Ms. Wheeler the $100,000 policy limits after the arbitration award was issued.

- 14 -

I agree with the majority opinion that "there is no record of the arbitration proceeding that gave rise to [the arbitration] award, nor is there any evidence establishing the question that was submitted to the arbitration panel." I also acknowledge, along with the majority, that "the parties agreed that they did not submit a specific question or frame the issue for the panel." However, I disagree with that opinion's reliance on the absence of a record as a predicate for the conclusion that "the arbitration panel was free to frame the issue before it." I believe that their conclusion is patently wrong because the majority fails to address a threshold issue: What in the record authorized the arbitration panel to decide Encompass's liability or any issue regarding policy limits?[11]

As mentioned above, an arbitration panel "derives [its] jurisdiction from a mutual agreement of the parties to submit the matter to arbitration." See Blackstone Valley Gas & Electric Co., 64 R.I. at 223, 12 A.2d at 749 (emphasis added). The record does not contain a shred of evidence that the arbitration panel had the authority to decide (1) Encompass's liability

---

[11]     The majority opinion cites to Purvis Systems, Inc. v. American Systems Corp., 788 A.2d 1112, 1116 (R.I. 2002), in support of the proposition that the arbitration panel was "free to frame the issue before it." (Internal quotation marks omitted.) The opinion in that case states: "As long as the agreement to arbitrate is valid and the subject matter of the dispute is arbitrable, the arbitrator may frame the issues to be decided." Id. (internal quotation marks omitted) (emphasis added). Again, the majority fails to address the threshold issue. There is no evidence in this case that "the subject matter of the dispute [(viz., the issues regarding policy limits and Encompass's contractual liability)] [was] arbitrable." See id. (internal quotation marks omitted). In Purvis, the arbitration clause was broad, providing that "[a]ny controversy or claim arising out of or related to [the] contract or breach thereof, shall be settled by binding arbitration." Id. at 1115 (internal quotation marks and emphasis omitted). The panel therefore had the authority to frame the issues within that broad arbitration clause. Likewise, the majority's analysis might be correct if Encompass and Ms. Wheeler had agreed to arbitrate any controversy or claim arising out of or related to the insurance policy. In stark contrast, however, the arbitration clause in the case before us is as precise as it is narrow; it clearly indicates that the only arbitrable subject matter was the amount of damages that Ms. Wheeler could recover from the tortfeasor. There is no evidence that the parties agreed to arbitrate other issues. It ineluctably follows that the arbitration panel had absolutely no authority to "frame the issues" outside of the particular issue mentioned in the arbitration clause.

- 15 -

or (2) the issue of whether or not the policy limits should apply. Absent evidence of some supplementary agreement, the arbitration panel[12] was "powerless" to decide those two issues. See Crouch, 808 A.2d at 1078 ("[A]n arbitrator is powerless to arbitrate that which is not arbitrable in the first place." (internal quotation marks omitted)); cf. Town of Coventry v. Turco, 574 A.2d 143, 147 (R.I. 1990) (stating that an arbitrator "[does] not have the power and authority to rewrite [a contract]"). An arbitration panel is not "free to frame the issue before it" when the evidence shows that the parties agreed to arbitrate only discrete issues, as is the case here.

In 2005, the Utah Supreme Court addressed a case with a strikingly similar fact pattern. See Allstate Insurance Co. v. Wong, 122 P.3d 589 (Utah 2005). An automobile insurer filed a motion to vacate or modify an arbitrator's award of underinsured motorist benefits where the award exceeded the policy limits. Id. at 592. Just as in the case before us, the parties had agreed to arbitrate the insured's damages—not the insurer's liability. See id. Additionally, just as in the case before us, the arbitrators were never informed of the policy limits. See id. The Utah Supreme Court unanimously recognized that the arbitration panel went beyond its authority when it issued an award that (1) determined the insurer's liability (as opposed to the insured's damages) and (2) exceeded policy limits:

> "By the terms of [the arbitration] agreement, the parties agreed to submit the issue of [the insured's] damages to arbitration. The parties did not submit to arbitration the issue of [the insurer's] liability to [the insured]. * * * In fact, there is no language in the [arbitration agreements] that would operate to invalidate or otherwise modify the mutual obligations contained in the parties' insurance contract. In the absence of such language, as well as the lack of any behavior that would evidence a contrary intent, we

---

[12]    It is quite possible that the arbitration panel never received the insurance policy and thus did not know the scope of its own authority. That fact is irrelevant to my analysis. The point is that an arbitration panel's award can only be confirmed if there is evidence of an agreement to arbitrate the issues decided in the award. And there is no such evidence in this case.

conclude that the insurance contract, as well as the policy limits contained in that contract, remain in full force.

"As a result, the arbitrator, by purporting to fix [the insurer's] liability, based his award on a matter not submitted to arbitration." Id. at 595–96 (emphasis added).

The court then modified the award to reflect the insurance policy limits under a statutory provision virtually identical to § 10-3-14(a).[13]

Similarly, in a case where the "parties agreed that the arbitrators were given no instructions as to their authority," an appellate court in the State of Washington held: "In the absence of any instructions from the parties to the arbitrators that would modify the authority granted by the policy, we conclude that the arbitrators could award no more than the limit of the UIM coverage." Anderson v. Farmers Insurance Co. of Washington, 923 P.2d 713, 716 n.1, 716 (Wash. Ct. App. 1996).

I believe that our own precedent also lends exceptionally strong support to what I consider to be the correct conclusion. In Bush v. Nationwide Mutual Insurance Co., 448 A.2d 782, 784 (R.I. 1982), the contract of insurance stated: "[i]n any uninsured motorist claim * * * [i]f agreement cannot be reached with regard to liability or amount of damages, the matter will be decided by arbitration." (Internal quotation marks and emphasis omitted.) In his award in that case, the arbitrator found that the vehicle that plaintiffs (the insureds) were driving at the time of the collision was not covered under the uninsured motorist provisions of their policy. This Court reversed the arbitrator's ruling and stated:

"The agreement to arbitrate does not cover all disputes between insured and insurer but rather refers only to two issues: the

---

[13]     The Utah court also recognized that it is "commonplace" for parties to withhold insurance policy limits from arbitrators in underinsured motorist arbitrations because "parties to arbitration realize that imposing predetermined boundaries as to the range of a permissible award may adversely affect an arbitrator's ability to make an objectively fair assessment of damages." Allstate Insurance Co. v. Wong, 122 P.3d 589, 595 (Utah 2005).

- 17 -

insured's liability for the accident and the amount of damages flowing from such liability. <u>There is no language in either the arbitration provisions or the policy as a whole which can be read as an agreement to submit to arbitration issues regarding policy coverage</u>." <u>Id.</u> at 784–85 (emphasis added).

Notably, this Court held that the arbitrator <u>was not free to frame the issue before him</u> because the parties were bound by the specific arbitration clause in the insurance policy. <u>See</u> <u>id.</u>

As was the case in <u>Bush</u>, there is no language in the insurance policy between Ms. Wheeler and Encompass "which can be read as an agreement to submit to arbitration issues regarding policy coverage." <u>See</u> <u>Bush</u>, 448 A.2d at 785. The only arbitrable issue in this case was the amount of damages incurred by Ms. Wheeler as a result of the tortfeasor's actions.

In conclusion, I reiterate that Ms. Wheeler concedes that the parties went to arbitration "[p]ursuant to the provisions of the insurance policy." The arbitration clause in that contract is unquestionably narrow. The majority states that they are "unwilling to vacate an arbitration award on the basis of an insurance policy that was not in evidence" before the arbitration panel. What they are willing to do, however, is confirm an arbitration award that addresses two issues (<u>viz.</u>, Encompass's contractual liability to Ms. Wheeler and the policy limits) even though there is absolutely no evidence in the record that the parties ever agreed to submit those issues to arbitration. The trial justice was <u>required</u> to modify the award "to effect the intent thereof and promote justice between the parties." <u>See</u> § 10-3-14(b). The majority instead confers a measure of authority on the arbitration panel that the parties never did. <u>See</u> <u>Blackstone Valley Gas & Electric Co.</u>, 64 R.I. at 223, 12 A.2d at 749 (noting that an arbitration panel "derives [its] jurisdiction from a mutual agreement of the parties to submit the matter to arbitration").

Because I believe that the trial court quite properly modified the award to conform to the parties' arbitration agreement, I feel compelled to respectfully dissent.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        Joyce Wheeler v. Encompass Insurance Company.

**CASE NO:**             No. 2011-313-Appeal.
                        (PM 11-2250)

**COURT:**               Supreme Court

**DATE OPINION FILED:**  May 24, 2013

**JUSTICES:**            Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                        Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

                        For Plaintiff:  Joseph J. Altieri, Esq.

                        For Defendant:  Scott M. Carroll, Esq.