**Joseph CAFFEY et al.**

**v.**

**Christopher LEES.**

**No. 2016–0254–Appeal, No. 2017–0079–Appeal. (PM 15–5649)**

Supreme Court of Rhode Island.

January 9, 2018

George T. Gilson, Esq., for Plaintiffs.

Ronald J. Resmini, Esq., for Defendant.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## OPINION

Justice Indeglia, for the Court.

Christopher Lees (Lees) appeals from the entry of judgment vacating an arbitration award in his favor, and instead, finding for Joseph Caffey[1] (Caffey) and Omni Development Corporation.[2] This matter came before the Supreme Court on December 7, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided. After considering the arguments set forth in the parties' memoranda and at oral argument, we are convinced that cause has not been shown. Thus, further argument or briefing is not required to decide this matter. For the reasons outlined below, we vacate the judgment of the Superior Court.

## I

## Facts and Travel

On May 28, 2011, Caffey[3] lost consciousness while operating his vehicle due to health complications, causing an automobile accident in Seekonk, Massachusetts. Lees was a passenger in the car that Caffey rear-ended. Lees alleged that he suffered constant back issues that ultimately required surgery as a result of that accident. The parties attempted to resolve the matter through arbitration.

On February 4, 2014, the parties executed a binding arbitration agreement that stipulated to a high/low award starting at $9,000 and capped at $160,000 with no

interest.[4] The parties agreed to waive their rights to a jury trial and "any appeals of the * * * arbitration hearing to the extent permitted by Rhode Island law * * *." The agreement provided that it would be "governed by, construed and enforced in accordance with the laws of the State [*sic*] of Massachusetts," and contemplated that any petitions relating to the arbitration would be filed in accordance with the Rhode Island Arbitration Act, G.L. 1956 chapter 3 of title 10.

Each side presented evidence to an arbitrator, who had been agreed upon by the parties, at a two-day arbitration hearing on November 25, 2014 and February 4, 2015. During the arbitration, Caffey contested both liability and damages. Caffey argued that the accident was not the proximate cause of Lees' back injury for which he required surgery because Lees initially suffered a back injury ten years prior to the accident. Doctor Mark Palumbo had performed back surgery on Lees in both 2001 and 2009. Lees stated that he saw Dr. Palumbo seventeen days before the accident and, at that time, Dr. Palumbo noted that he saw no indication that Lees needed further surgery. After returning to work following the accident, Lees claimed that he started to feel pain in his lower back and left leg. Palumbo performed another back surgery on Lees on September 19, 2011, nearly four months after the accident.

At the November 25, 2014 hearing, Lees presented an affidavit from Dr. Palumbo

---

1. Although Lees is the injured party, Joseph Caffey and Omni Development Corporation filed a petition to vacate the arbitration award in the Superior Court, and are therefore listed first in the case caption.

2. Since Caffey was the operator of a vehicle owned by Omni Development Corporation, for the sake of clarity, we will refer to them collectively as Caffey.

3. At oral argument it was brought to our attention that Caffey is now deceased.

4. Pursuant to the arbitration agreement, the parties did not disclose the high/low agreement to the arbitrator.

pursuant to Rhode Island law that was dated November 7, 2013, which stated that the accident "exacerbated and/or worsened" Lees' "condition" and the "services rendered" were "proximately caused" by the accident. In response, Caffey sought to depose Dr. Palumbo. Lees then withdrew the affidavit. Subsequently, Lees offered a second affidavit to replace the first one, this time pursuant to Massachusetts law, signed on August 4, 2014, in which Dr. Palumbo also asserted that a causal relationship existed between the accident and the surgery. Caffey's objection to this affidavit was sustained.[5]

On January 2, 2015, Lees' attorney sent a third affidavit to the arbitrator,[6] which Dr. Palumbo had signed on December 30, 2014, again concluding that there was a causal relationship between the injury that required surgery and the collision. Caffey's attorney was not informed of this third affidavit submitted to the arbitrator until the February 4, 2015 arbitration hearing.

In response to the third affidavit, Dr. Palumbo was deposed in June 2015. It was at this deposition that Caffey first learned of a January 24, 2012 letter from Dr. Palumbo to Lees' counsel indicating that he did not connect Lees' surgery to the accident. Specifically, he wrote that he was "not able to causally relate [Lees'] * * * recently performed operation to the incident as of 05/28/11." This statement was not disclosed to Caffey at either of the arbitration hearings.

Following the June 2015 deposition, both parties filed closing memoranda with the arbitrator. On December 2, 2015, the arbitrator issued his decision, finding that Lees was not contributorily negligent and awarding Lees damages of $190,860, plus interest and costs.

On December 29, 2015, following the arbitration decision, Caffey filed a petition to vacate the arbitration award in Providence County Superior Court, to which Lees objected; Lees also filed a petition to confirm the award. The hearing justice conducted a hearing on April 21, 2016. In support of his petition to vacate the award, Caffey argued that: (1) it was procured by fraud, corruption, or undue means; (2) the arbitrator was partial to Lees; (3) the arbitrator failed to consider evidence offered at the arbitration hearing; (4) the arbitrator applied an incorrect standard for evidence; and (5) the arbitrator "so imperfectly executed his powers that a mutual, final, and definite award upon the subject matter submitted was not made." Lees countered that the Superior Court lacked jurisdiction to hear arguments on the motion because, pursuant to the arbitration agreement, Massachusetts law governed.[7]

On June 3, 2016, the hearing justice issued a written decision vacating the arbitration award. In the decision, the hearing justice determined that the court had jurisdiction, and he ultimately concluded that the arbitration award had been procured by undue means. Specifically, the hearing

---

5. Caffey contends that Lees chose to withdraw the first affidavit of Dr. Palumbo and file a second affidavit according to Massachusetts law in order to avoid the requirement of Dr. Palumbo submitting to a deposition. *See Gerstein v. Scotti*, 626 A.2d 236, 238 (R.I. 1993) ("A physician who has given his or her opinion in the form of an affidavit has voluntarily expressed such an opinion and would, therefore, impliedly agree to submit to cross-examination on that opinion as well as on any factual underpinnings of that opinion.").

6. The affidavit did not specify whether it was subject to Massachusetts or Rhode Island law.

7. While Lees contested whether the Superior Court had jurisdiction below, he does not raise that issue on appeal.

justice found that the failure of Lees' counsel to disclose Dr. Palumbo's prior, contrary finding of no causal relationship was "pertinent and material evidence" that was "concealed until months after the arbitration hearing," which constituted undue means.

Therefore, the Superior Court entered judgment on June 7, 2016, vacating the award, from which Lees timely appealed. Lees also filed a motion for reconsideration on June 15, 2016. The motion for reconsideration was heard on June 30, 2016, and denied on July 6, 2016. Lees appealed from that order as well, and this Court consolidated both appeals.

## II

### Standard of Review

■ It is well settled that "[p]ublic policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." *Lemerise v. Commerce Insurance Co.*, 137 A.3d 696, 699 (R.I. 2016) (quoting *State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 64 A.3d 734, 739 (R.I. 2013)). "[P]arties who have contractually agreed to accept arbitration as binding are not allowed to circumvent an award by coming to the courts and arguing that the arbitrators misconstrued the contract or misapplied the law." *Berkshire Wilton Partners, LLC v. Bilray Demolition Co.*, 91 A.3d 830, 835 (R.I. 2014) (quoting *Prudential Property and Casualty Insurance Co. v. Flynn*, 687 A.2d 440, 441 (R.I. 1996)). Thus, "[j]udicial review of arbitration awards is 'statutorily prescribed and is limited in nature.'" *Wheeler v. Encompass Insurance Co.*, 66 A.3d 477, 480 (R.I. 2013) (quoting *Buttie v. Norfolk & Dedham Mutual Fire Insurance Co.*, 995 A.2d 546, 549 (R.I. 2010)).

■ This Court reviews an arbitration award in accordance with § 10–3–12(1), which provides, in pertinent part, that we will only modify or vacate an award if it "was procured by corruption, fraud, or undue means." Ordinarily, "[t]his Court will overturn an arbitration award 'only if the award was irrational or if the arbitrator[s] manifestly disregarded the law.'" *Wheeler*, 66 A.3d at 481 (quoting *Aponik v. Lauricella*, 844 A.2d 698, 703 (R.I. 2004)). However, "on an appeal from an order confirming or vacating an arbitration award, this Court is not without authority to 'make such orders * * * as the rights of the parties and the ends of justice require.'" *Id.* (quoting § 10–3–19).

## III

### Discussion

■ On appeal, Lees argues that the hearing justice erred in concluding that the arbitration award was procured by undue means. We have not revisited "undue means" with respect to the vacation of an arbitration award since our ruling in *Cleland v. Hedly*, 5 R.I. 163 (1858), where we suggested that an award attained through "undue means" would be one "arrived at by a departure from natural justice." *Id.* at 169, 170 (noting that undue means may exist in a case "where the arbitrator has received evidence from witnesses, of which the party had no notice, and no opportunity to be heard in reply"). More recently, the First Circuit interpreted "undue means" as referring to "underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either." *National Casualty Co. v. First State Insurance Group*, 430 F.3d 492, 499 (1st Cir. 2005); *see also Doctor's Associates, Inc. v. Windham*, 146 Conn.App. 768, 81 A.3d 230, 237 (2013) ("[T]o establish 'undue means' * * * a party must prove 'nefarious intent or bad

faith,' * * * or conduct that is 'immoral if not illegal.'" (quoting *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 993 (8th Cir. 1999) and *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992))).

In his decision, the hearing justice expressed concern that Caffey "did not have the opportunity to rebut [the third] affidavit and argue that it was inconsistent with the conclusion Dr. Palumbo first communicated to * * * Lees' counsel in January 2012, until the June 2015 deposition, during which [Caffey] first became aware of Dr. Palumbo's earlier conclusion." The hearing justice reasoned that Caffey did not have the benefit of "challeng[ing] the conclusions of Dr. Palumbo when such challenge would have been most effective, which would have been at the hearing." In conclusion, the hearing justice stated that the "failure to disclose the expert's prior, contrary findings taints the resultant proceedings and constitute[s] undue means."

Lees argues that the initial opinion letter should not have been considered because that opinion was not based on all of the information in Lees' medical file. Further, he argues that, when Dr. Palumbo did have all of the information in the file available to him, he "provided an accurate causal relationship opinion based on a reasonable degree of medical certainty." Caffey, on the other hand, characterizes the actions of Lees' counsel as attempts to hide information, especially given that he withdrew the first affidavit after Caffey requested to depose Dr. Palumbo and also failed to disclose Dr. Palumbo's initial conflicting opinion. Caffey maintains that an earlier disclosure of Dr. Palumbo's initial contrary opinion would have changed the entire arbitration proceeding.

While we recognize that Caffey may have proceeded differently in the arbitration hearings had he obtained all the relevant materials in a more timely fashion, he did not submit his closing memorandum to the arbitrator until August 20, 2015, two months after he deposed Dr. Palumbo and learned of his initial conflicting opinion that Lees' surgery was not causally related to the accident. In fact, after Caffey had the opportunity to question Dr. Palumbo at the June 2015 deposition, Caffey referenced the inconsistencies in Dr. Palumbo's opinions in his closing memorandum, placing the issue squarely before the arbitrator in advance of the arbitrator's issuance of the award four months later in December 2015.

Moreover, at the deposition, Dr. Palumbo testified that his more recent opinion about Lees' injury was not based on new evidence, but rather on a medical record that he had not reviewed as closely in the first instance. In response to Caffey's counsel's question as to what caused Dr. Palumbo to alter his opinion, the doctor stated as follows:

"I think then the only—it's in the record. I suppose I should have known it. I'm not sure I had it at the top of my conscious level at the time without reviewing the records, but it was there for me to know if I chose to review these records in the same detail that I did as of my letter of December 29, 2014, so it would be primarily the fact that he had made an appointment to see me for pre-existing pain prior to the August incident."

Based on this testimony, it appears that Dr. Palumbo's change of opinion was due to his oversight of what Lees' medical record reflected rather than alleged underhanded behavior of Lees' counsel. Therefore, while we admonish Lees' counsel for his failure to disclose those documents revealing Dr. Palumbo's initial opinion on the causation element and subsequent failure to provide Caffey with the third affidavit

until the February 2015 arbitration hearing, we nevertheless cannot agree with the hearing justice's conclusion that his actions were so "underhanded" or "conniving" as to amount to "undue means" in accordance with both Rhode Island and Massachusetts law.[8] *See National Casualty Co.*, 430 F.3d at 499; *cf. McGinity v. Pawtucket Mutual Insurance Co.*, 899 A.2d 504, 507 (R.I. 2006) ("[A] plaintiff arguing for the vacating of an arbitration award due to evident partiality must demonstrate not only an improper interest, but also a 'causal nexus between the [party-appointed arbitrator's conduct] and the arbitration award.'" (quoting *V.S. Haseotes & Sons, L.P. v. Haseotes*, 819 A.2d 1281, 1285 (R.I. 2003))); *see also Prudential Property & Casualty Insurance Co.*, 687 A.2d at 441 ("Only in cases in which an award is so tainted by impropriety or irrationality that the integrity of the process is compromised should courts intervene."). As such, we decline to hold that the award was procured by "undue means." Based on our determination, we need not address Lees' remaining arguments.[9]

Furthermore, we decline to entertain Lees' contention that the arbitrator's award of $190,860, plus interest and costs, should be affirmed because Caffey failed to accept the arbitration agreement by filing the petition to vacate in the Superior Court. Both parties agreed to the high/low arbitration agreement, and permitting Lees to recover any amount higher than that which was agreed upon would penalize Caffey for exercising his statutory right to challenge an arbitration award.

## IV

## Conclusion

For the reasons stated herein, we vacate the judgment of the Superior Court. We remand the record to that tribunal for further proceedings consistent with this opinion.

8. Caffey argues that there were additional grounds upon which to find "undue means" beyond those that the hearing justice relied upon in vacating the award. Specifically, Caffey references Lees' counsel's *ex parte* communications with the arbitrator, citing our admonishment in *Pierce v. Rhode Island Hospital*, 875 A.2d 424, 427 n. 2 (R.I. 2005). However, Lees' counsel only contacted the arbitrator after the award had already been issued, when the matter was pending before the Superior Court. *See id.* at 426, 427 n. 2 (ultimately upholding the arbitration award even where the attorneys had *ex parte* communications with the arbitrator after the original award was issued but before an amended award was drafted). Accordingly, while we unequivocally discourage such communication, we do not conclude that Lees' counsel's *ex parte* discussion with the arbitrator had any bearing on the award.

9. Lees also presents a choice-of-law argument, suggesting that Massachusetts law applies pursuant to the arbitration agreement. However, this argument holds little weight because, in vacating the award, the hearing justice referenced both Rhode Island and Massachusetts law, suggesting that the outcome would have been the same under either jurisdiction's laws. *See Avco Corp. v. Aetna Casualty & Surety Co.*, 679 A.2d 323, 330 (R.I. 1996) (finding the choice-of-law argument "feckless" where the hearing justice determined that his finding would have been the same under New York, Connecticut, or Rhode Island law). We conclude that our review on appeal also remains the same whether we apply Massachusetts or Rhode Island law. *See, e.g., Superadio Limited Partnership v. Winstar Radio Productions, LLC*, 446 Mass. 330, 844 N.E.2d 246, 250 (2006) (outlining judicial review of arbitration awards).